IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100668-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (July 6, 2012) |
| Lonny High, | ) | |
| | ) | 2012 UT App 180 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Provo Department, 091403144
The Honorable Lynn W. Davis

Attorneys:     Matthew R. Morrise and Margaret P. Lindsay, Provo, for Appellant
               Mark L. Shurtleff and Andrew F. Peterson, Salt Lake City, for Appellee

-----

Before Judges McHugh, Thorne, and Christiansen.

McHUGH, Presiding Judge:

¶1     Lonny High appeals his conviction for aggravated assault with an "in concert" enhancement, a second degree felony, *see* Utah Code Ann. § 76-5-103 (2008); *id.* § 76-2-202; *id.* § 76-3-203.1 (Supp. 2011), and riot, a third degree felony, *see id.* § 76-9-101 (2008).[1]  We affirm.

---

[1]Since the events giving rise to the charges in this case, the Utah Legislature has made material changes to the aggravated assault statute.  Therefore, we cite the version

(continued...)

BACKGROUND[2]

¶2    On October 24, 2009, High, Saul Cristobal,[3] and an unidentified third individual (the Third Man), assaulted two brothers (Big Brother and Little Brother).  That evening, Big Brother and his friend (Friend) were longboarding on the Provo River Parkway (the Trail).  High, Cristobal, and the Third Man, who were also on the Trail, chased Friend and pulled him off his longboard.  Eventually, Friend and Big Brother left without further incident.

¶3    Later that night, around 10 p.m., Big Brother was riding his longboard down the Trail alone and again saw the three men.  As he passed, one of the men asked Big Brother, "What you looking at?"

¶4    Approximately one hour later, Big Brother and Little Brother met on the Trail to walk home.  Despite Big Brother's urging to take a different route, Little Brother decided to proceed on their normal path along the Trail.  Little Brother was on foot and Big Brother was riding his longboard.  Soon thereafter, on a portion of the Trail adjacent to a road, the brothers came across High, Cristobal, and the Third Man, who were walking toward them.  High and Cristobal left the Trail, and crossed to the far side of

---

[1](...continued)
of that statute in effect when the alleged offense occurred.  *Compare* Utah Code Ann. § 76-5-103 (2008), *with id.* § 76-5-103 (Supp. 2011).  Because the legislature has not made any substantive changes to the provisions of the other statutes discussed in this opinion, we cite the current version of the Utah Code with respect to all statutes except the aggravated assault statute.

[2]We state the facts "in a light most favorable to the jury's verdict" and "present conflicting evidence only as necessary to understand issues raised on appeal."  *See State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (internal quotation marks omitted).

[3]High and Cristobal were tried together and the jury found them both guilty.  Cristobal has also appealed his conviction and we issue our decision in that matter as a companion case to this opinion.  *See State v. Cristobal*, 2012 UT App 181.

the road, while the Third Man walked past the two brothers. When the Third Man whistled, High and Cristobal returned to the Trail and the three began following the brothers. Big Brother informed Little Brother that these three men had confronted him earlier that night. The brothers paused on two occasions to ask the three men to stop following them. During the second exchange, Big Brother referred to the three men as "wannabe gangsters."

¶5      As the two brothers turned to continue on their way, Cristobal picked up a rock and ran at Big Brother with it, while the Third Man attacked Big Brother with what appeared to be a stick. Big Brother curled up into a defensive position just before Cristobal slammed the rock into the side of his head and the Third Man beat him with the stick. High also participated in the altercation, during which the Third Man hit Little Brother on the head with the stick. As the three assailants left the scene, they shouted "PVL," an acronym for the "Provo Varrio Locotes" gang, and "flash[ed] the signs," to let the brothers know "that's who did it." The assault left Big Brother bleeding from a head wound.

¶6      The brothers called the police and positively identified High and Cristobal as two of the three the men who had assaulted them. The State charged High and Cristobal with riot and aggravated assault committed in concert with two or more persons. Neither defendant requested a separate trial.

¶7      Before trial, the State disclosed that it planned to introduce gang evidence, including that High and Cristobal had been convicted for assault in concert with two or more persons for a May 20, 2009 altercation on the Trail. After briefing and argument,[4] the trial court ruled that some of the gang evidence was admissible and reserved ruling on the admissibility of the other gang evidence. During trial, High and Cristobal announced their decisions to testify, and the trial court provided the parties another opportunity to be heard on the admissibility of the gang evidence. Ultimately, the trial court ruled that the fact both defendants were felons could be introduced, but the details of the convictions could not due to their similarity to the circumstances of the instant charges. The court also decided that because there had already been evidence that High had "PVL" tattooed on his hand and that the defendants yelled "PVL" as they

---

[4]We discuss the trial court's consideration of the arguments related to the admission of the gang evidence in more detail later in this opinion. *See infra* ¶¶ 32-38.

fled, the State could ask questions about "how long [the defendants had] known each other and in what capacity, and whether or not they [were gang] members." When asked for clarification, the trial court instructed the State "to exercise some caution" and invited the defendants to object if the State went "too far."

¶8 High and Cristobal both testified that they had acted in self-defense when the brothers attacked them without provocation. They indicated that their first encounter with Big Brother came while they were "hang[ing] out" on the Trail.[5] High and Cristobal testified that they told Big Brother and Friend not to pay attention to the Third Man, whom they claimed not to know, because he appeared to be intoxicated and had approached Big Brother and Friend. When they next saw Big Brother, he rode his longboard past them, and no words were exchanged.

¶9 High and Cristobal testified that the Third Man was not present when they again encountered the brothers a short while later. High, who had walked across the street to go his separate way, saw the brothers approaching Cristobal on the Trail. Because all three then stopped, High returned to learn what was happening. Both High and Cristobal reported that Big Brother was armed with a pool cue and taunting Cristobal.[6] High testified that Big Brother raised the pool cue and "looked like he was getting ready to come at [them]." To defend himself, High picked up a rock as Big Brother rushed at him. High hit Big Brother with the rock, causing Big Brother to drop the pool cue. High grabbed the pool cue and hit Big Brother with it. Then Little Brother grabbed High, so High responded by hitting Little Brother with the cue. Cristobal testified that he did not participate in the fight but was "watching everything." After the fighting was over, High exclaimed to Cristobal, "[I]t's PVL," because he was "all pumped up."

¶10 At trial, High admitted that he was a member of the PVL gang, and also showed the jury his "PVL" tattoo. The defendants explained that they had been members of PVL together for about four years. Although High remained an active member of the gang, they both claimed that Cristobal had disavowed his affiliation two or three months before the altercation.

---

[5]High and Cristobal indicated that they first encountered Big Brother around 11 p.m. and that the altercation occurred about thirty minutes later.

[6]The police later found a broken pool cue at the scene of the incident.

¶11    On cross-examination, High stated that PVL stands for "Provo Varrio Locotes," which translates in English to "Provo Neighborhood Crazies." The State asked High, "what does [PVL] do; what is it about?" High answered, "A street gang," and his attorney objected. The trial court permitted the testimony and allowed the defendants to register a continuing objection to that line of questioning. The State then elicited additional testimony about PVL's and High's activities.[7]

¶12    At the close of evidence, High memorialized his objection to the Gang Activity Evidence and moved for a mistrial. The trial court denied the motion for mistrial, ruling that by testifying, High and Cristobal had opened the door to "some threshold inquiries as it relates to the organization [PVL] itself." The trial court concluded that the State's questioning did not go "beyond the direction of the Court" in response to the pretrial and in limine motions. However, the court did give an instruction limiting the jury's use of all of the gang related evidence.[8]

---

[7]We refer to all of the evidence admitted after High's objection as the "Gang Activity Evidence" to distinguish it from the evidence admitted without objection, which we refer to as the "Gang Affiliation Evidence."

[8]The limiting instruction stated that the First Amendment guarantees the right to peaceably assemble and explained,

> This Court has allowed you to hear evidence that Defendants have associated with others who describe themselves as P.V.L. Such associations are not inherently illegal. You may consider such evidence only for the purpose of determining, beyond a reasonable doubt, whether the State has proved each element of each crime charged . . . . Such evidence was not offered to prove and you are not allowed to consider such evidence as proof that either Defendant is prone or inclined to commit crimes generally or the crimes charged in this case specifically. Neither Defendant's character traits are relevant in this trial. It is admissible however to show motive, opportunity, intent, preparation, plan, knowledge, or identity.

¶13    During closing argument, the State did not mention the Gang Activity Evidence. The State focused on credibility instead, arguing that the testimony of Little Brother and Big Brother was more reliable than that of the defendants. The jury found High and Cristobal guilty of both riot and aggravated assault, and also found that they had acted in concert. High filed a timely appeal to this court, challenging his conviction.

ISSUE AND STANDARD OF REVIEW

¶14    On appeal, High claims that the trial court exceeded its discretion by admitting evidence of his other bad acts. Specifically, High challenges the admission of the Gang Activity Evidence. We will reverse a trial court's decision to admit evidence of other bad acts only if the trial court exceeded its discretion, *see State v. Widdison*, 2001 UT 60, ¶ 42, 28 P.3d 1278, and the error was harmful, *see Butler v. Naylor*, 1999 UT 85, ¶ 9, 987 P.2d 41.

ANALYSIS

¶15    High does not challenge the trial court's pretrial ruling or the Gang Affiliation Evidence. Indeed, High concedes that the Gang Affiliation Evidence was probative of the three assailants' relationship and their "alleged collusion."[9] *See State v. Toki*, 2011 UT App 293, ¶ 45, 263 P.3d 481 (holding that "shared gang affiliation" is "highly probative" to show codefendants acted "in concert"), *cert. denied*, 272 P.3d 168 (Utah 2012); *see also United States v. Brown*, 200 F.3d 700, 708-09 (10th Cir. 1999) (holding that gang affiliation evidence was relevant to "identity, joint venture and existence of a conspiracy" and that "gang affiliation illuminates the relationship between [a witness] and the [d]efendants"); *United States v. Thomas*, 86 F.3d 647, 652 (7th Cir. 1996) ("Gang

---

[9]The "in concert" enhancement requires proving that "the defendant was aided or encouraged by at least two other persons . . . and was aware of this aid or encouragement" while each other person "was physically present" or "participated as a party to [the] offense." Utah Code Ann. § 76-3-203.1(1)(b) (Supp. 2011). As charged, "riot" required proving that High assembled with "two or more other persons with the purpose of engaging . . . in tumultuous or violent conduct, knowing, that [the other persons had] the same purpose." *Id.* § 76-9-101(1)(b) (2008).

affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue.")  Rather, High contends that the Gang Activity Evidence that was related to his previous participation in gang fights and the fact that status within PVL is attained through violence should have been excluded under rule 404(b) of the Utah Rules of Evidence.[10]

## I.  The Gang Activity Evidence Is Properly Considered Under Rule 404(b)

¶16    Rule 404(b) governs the admission of evidence of "crime[s], wrong[s], or other act[s]" committed by the defendant.  *See* Utah R. Evid. 404(b).[11]  Such evidence is admissible if it is offered for a proper, noncharacter purpose, if it is relevant under rules 401 and 402 of the Utah Rules of Evidence, and if its probative value is not substantially outweighed by the danger of unfair prejudice under rule 403 of the Utah Rules of Evidence.  *See State v. Nelson-Waggoner*, 2000 UT 59, ¶¶ 17-20, 6 P.3d 1120.

¶17    As a threshold matter, the State argues that the Gang Activity Evidence is not governed by rule 404(b) because it relates only to High's affiliations and not to his actions.  According to the State, "[t]here are some aspects of the human condition that are not aptly captured by the phrase 'crimes, wrongs or acts.'"  *See* 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:28 (3d ed. 2007).  In support, the

---

[10]For the convenience of the reader, we cite the current version of rule 404 and other rules of evidence, which were amended "stylistically" in 2011.  *See generally* Utah R. Evid. 404, 2011 advisory committee's note ("There is no intent to change any result in any ruling on evidence admissibility.").  Because the federal versions of the rules cited in this opinion remain substantially the same as the Utah versions, we consider decisions interpreting the federal rules informative.  *See State v. Webster*, 2001 UT App 238, ¶ 22 n.1, 32 P.3d 976 ("Since the advisory committee generally sought to achieve uniformity between Utah's rules of evidence and the federal rules of evidence, this court looks to the interpretations of the federal rules by the federal courts to aid in interpreting the Utah rules." (brackets and internal quotation marks omitted)).

[11]"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character . . . .  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Utah R. Evid. 404(b).

State relies on *Somee v. State*, 187 P.3d 152 (Nev. 2008). However, the facts of that case are distinguishable from those at issue.

¶18    In *Somee*, the prosecution offered evidence of the defendant's admission to police officers "that he was a member of the Horney Boyz gang and that officers had previously found him in possession of weapons."[12] *See id.* at 157. Somee objected under a rule similar to rule 404(b) on the ground that the evidence was impermissible character evidence. *See id.* at 157, 160. The trial court allowed the evidence of Somee's gang affiliation to be introduced and the jury convicted him. *See id.* On appeal, Somee claimed that the police officers' testimony about his gang affiliation was improper character evidence that should have been admitted only with a contemporaneous limiting instruction, as required by Nevada precedent regarding evidence of prior bad acts. *See id.* at 160. After reversing and remanding for a new trial on other grounds, the Nevada Supreme Court indicated that the evidence of Somee's gang affiliation "was not character evidence" and that it therefore did not need to reach the question of whether the trial court should have given a limiting instruction at the time the evidence was introduced. *See id.* at 160-61.

¶19    While *Somee* does provide support for the proposition that evidence of a defendant's membership in a gang is not properly examined under rule 404(b), the state has pointed us to no authority from Utah deciding this matter.[13] Moreover, a number of jurisdictions that have considered the matter have concluded that membership in a gang does constitute evidence of other crimes, wrongs, or acts governed by rule 404(b). *See, e.g.*, *Hoops v. State*, 681 So. 2d 521, 530 (Miss. 1996) ("It would be folly for this Court to hold that affiliation or membership with a street gang such as this one does not

---

[12]Although the fact section of the opinion states that the trial court admitted evidence that Somee had previously been found in possession of weapons, there is no discussion of that evidence in the analysis. *See Somee v. State*, 187 P.3d 152, 157, 160-61 (Nev. 2008).

[13]While this court has not examined whether gang affiliation by itself is an "other act," it has, without discussion, included gang affiliation in a 404(b) analysis that also included evidence that the defendant had been in prison, been on parole, had a history of domestic violence, and had allegedly solicited another person to threaten the victim. *See State v. Pedockie*, 2008 UT App 417U, paras. 2-8 (mem.).

constitute a bad act as contemplated by Miss. R. Evid. 404(b).”); *Utz v. Commonwealth*, 505 S.E.2d 380, 384 (Va. Ct. App. 1998) (analyzing gang affiliation under Virginia’s prior bad acts standard because “a juror might associate a defendant with such an affiliation as a person of bad character or someone prone to aggressive or violent behavior”). *But see United States v. Hodges*, 315 F.3d 794, 801 (7th Cir. 2003) (“Without any testimony of particular prior bad acts Hodges participated in as a gang member, we find that evidence of his mere affiliation with the gang does not fall under Rule 404(b).”). Nevertheless, we need not resolve today the State’s contention that membership in a gang alone does not constitute evidence of “a crime, wrong, or other act,” *see* Utah R. Evid. 404(b)(1), because the evidence to which High objects goes beyond his membership in PVL.

¶20    Trial counsel made no objections to the State’s cross-examination of High until it asked, “[W]hat does [PVL] do; what is it about?”  High answered, “A street gang.”  At that point, High’s attorney immediately objected to that question and the similar ones that followed.  The trial court allowed the testimony, which proceeded as follows:

> [State:]  Is there a territorial boundary for PVL?
> [High:]  Provo.
> [State:]  Okay, does the organization do anything to be able to protect or to be able to assert itself within that boundary?
> [High:]  We have conflicts with rival gangs.
> [State:]  “Conflicts,” meaning?
> [High:]  Fights.
> [State:]  Fights?
> [High:]  Yeah.
> [State:]  Willingly coming together to meet a rival gang to fight?
> [High:]  Yeah.
> [State:]  Do you understand that that’s probably illegal?
> [High:]  Yeah.
> [State:]  But the organization doesn’t have a problem with that?
> [High:]  No.

| | |
|---|---|
| [State:] | So you participated in that kind of similar activity before? |
| [High:] | Yeah. |
| [State:] | So the organization exists to fight rival gangs? |
| [High:] | Yeah. |
| | . . . . |
| [State:] | Sounds like to be a member of PVL you've got to be kind of a tough guy, right? |
| [High:] | I wouldn't say that. |
| | . . . . |
| [State:] | Are there . . . differing degrees of people within PVL, or is everybody . . . pretty much equal? |
| [High:] | Pretty much equal. |
| [State:] | Is there any status at all within PVL? . . . Is there anything that would give you [any] kind of status within PVL? |
| [High:] | Just the like all the fighting and stuff. |
| [State:] | Okay. |
| [High:] | Just stuff you do. |
| [State:] | So the more that you do or the braver you are or the more aggressive you are, that gives you status? |
| [High:] | Yeah. |
| [State:] | You've been in there for like four years? |
| [High:] | Yeah. |

Unlike in *Somee,* where the evidence considered on appeal was limited to the fact that the defendant was a gang member, *see Somee*, 187 P.3d at 157, the testimony here implicated High in other crimes, wrongs or acts, both by inference and by admission.

¶21    High indicated that "we" fight other gangs, that he understands that this is probably illegal, that he has participated "in that kind of similar activity before," and that the gang members gain status through fighting and aggressive behavior. High's participation in prior gang fights and the fact that he knowingly engaged in illegal activity, including fighting and aggressive behavior, is the type of evidence of "a crime, wrong, or other act" contemplated by rule 404(b) of the Utah Rules of Evidence. *Compare State v. Nielsen*, 2012 UT App 2, ¶¶ 7-22, 271 P.3d 817 (analyzing evidence

presented in a preliminary hearing of the previous death of an infant while sleeping with parents under rule 404(b)), *with State v. Cammack*, 2004 UT App 380U, para. 3 (mem.) (holding that evidence of the defendant's reluctance to contact authorities was not governed by rule 404(b)).

## II. The Gang Activity Evidence Is Not Intrinsic to the Crime Charged

¶22    We also reject the State's alternative assertion that rule 404(b) is inapplicable because the evidence is intrinsic to the crime charged.  The evidence that High has previously fought with rival gangs over territory, that one of PVL's purposes is to engage in such fights with rival gangs, and that High understands that such conduct is likely illegal is not "inextricably intertwined" with the assault alleged in this case because there was no evidence presented that either Little Brother or Big Brother was a member of a rival gang.  Consequently, we examine High's claim of error concerning the Gang Activity Evidence under rule 404(b) of the Utah Rules of Evidence.

## III. Evidence Relating to a Defendant's Gang Membership Is Not Presumptively Inadmissible

¶23    Evidence that the crime charged is related to the activities of a gang or a person's gang membership has long been admitted in Utah.  *See State v. Gallegos*, 16 Utah 2d 102, 396 P.2d 414, 416 (1964) (relying on evidence that a killing was the product of a conflict between rival gangs to conclude that the evidence could not support a defense that the defendant acted "in the heat of passion").  In some instances where this has occurred, Utah appellate decisions do not reflect any objection to the evidence at trial.  *See id.*; *see also State v. Montoya*, 2004 UT 5, ¶¶ 2-6, 84 P.3d 1183 (reciting that a witness to a shooting recalled the defendant throwing hand signs and "yelling 'VLT,' which [the witness] understood to be a gang reference"); *State v. Harrison*, 805 P.2d 769, 771 (Utah Ct. App. 1991) (reciting that a shooting occurred between "two groups of people who had been posturing as if they were members of rival street gangs.").[14]  Where the gang evidence has been challenged, a number of our rulings have been issued in unpublished

---

[14]In *State v. Harrison*, 805 P.2d 769 (Utah Ct. App. 1991), we held that the defendant, a member of the Bloods gang, should have been permitted to introduce evidence that the Crips gang had firebombed his car.  *See id.* at 780-81.  However, we affirmed the conviction because the error was harmless.  *See id.* at 781, 789.

memorandum decisions. *See, e.g., State v. Milligan*, 2010 UT App 152U, paras. 4-5 (mem.) (holding that the trial court did not exceed its discretion in admitting gang-related evidence probative of a key witness's fear of retaliation, and that any error in admitting gang discipline evidence was harmless), *cert. denied*, 238 P.3d 443 (Utah 2010); *State v. Pedockie*, 2008 UT App 417U, paras. 9-10 (mem.) (holding that gang evidence was properly admitted where it explained "the circumstances around the crime and the victim's and [the d]efendant's intent"); *cf. State v. Whiteman*, 2000 UT App 283U, para. 3 (mem.) (affirming the trial court's denial of a new trial due to newly discovered evidence of the victim's gang affiliation and gang tattoos where there was no evidence that the defendant was aware of that affiliation at the time of the murder); *State v. Kandt*, 1999 UT App 276U, para. 2 n.1 (mem.) (rejecting the defendant's claim of ineffective assistance of counsel where the defense strategy was to establish that the victim falsely accused the defendant of assault "because of a longstanding grudge which arose as a result of the victim's and defendant's rival gang affiliation").

¶24  In this court's recently published decision, *State v. Toki*, 2011 UT App 293, 263 P.3d 481, *cert. denied*, 272 P.3d 168 (Utah 2012), we considered the proper limits on such testimony. *See id.* ¶ 45 (citing *Milligan*, 2010 UT App 152U, para. 6). In *Toki*, the defendant was convicted of discharging a firearm from a vehicle with an in concert enhancement and possession of a dangerous weapon by a restricted person. *See id.* ¶ 1. At trial, the State offered the testimony of a gang expert, whose definition of a gang included that it "had to be engaged in criminal activity." *See id.* ¶ 12. The expert also testified that the codefendants were both members of a gang known as TCG, and described the monikers, tattoos, and clothing typically adopted by TCG members. *See id.* Throughout his testimony, the gang expert interspersed comments about "our gang problem," the criminal activities of gangs, the importance of gang monikers during criminal activity, the use of blue bandanas as a disguise when "putting in work" for TCG, and his experiences with law enforcement gang units and gang crime investigations generally. *See id.*

¶25  On appeal, Toki claimed that this extensive evidence, "by extension," implicated him in TCG's criminal activity. *See id.* ¶ 41. This court first determined that the evidence relating to the codefendants' identity and membership in TCG was relevant to the "in concert" enhancement. *See id.* ¶¶ 42, 45. Next, we noted that the only fact witness who could provide evidence on these issues was subject to impeachment due to her level of intoxication during the incident and her false allegation that one of the

defendants had raped her. *See id.* ¶ 42. Based on these considerations, we concluded that the trial court did not exceed its discretion in determining that the expert testimony on these points was more probative than unfairly prejudicial. *See id.* ¶ 45. We also concluded, however, that "[a] great deal of [the expert's] testimony was clearly irrelevant to the charged offenses, particularly [his] gratuitous statements about 'our gang problem,' criminal activities of gangs, and his investigation of gang crimes," and that the "trial court erred by admitting that part of [the expert's] testimony and by failing to control the scope of the testimony when it exceeded appropriate limits." *See id.* ¶¶ 45-46 (citing *Milligan*, 2010 UT App 152U, para. 6). Nevertheless, we concluded that the error was harmless because "the prosecutor did not did not take unfair advantage of the gang-related testimony," and instead informed the jury of the limited scope of the gang evidence's relevancy. *See id.* ¶¶ 47-48. Additionally, *Toki's* codefendant was acquitted despite the improperly admitted gang evidence, which constituted just a "small part" of the proceedings. *See id.*

¶26     From these decisions it is apparent that while "no Utah precedent has stated that gang references automatically taint juries," we have viewed such evidence with caution due to the risk that it may carry some unfair prejudice. *See id.* ¶ 45 n.8; *see also Milligan*, 2010 UT App 152U, para. 6 ("[T]here may be some unfair prejudice inherent in making the jury aware of gang affiliation."). Other jurisdictions have also recognized that "'[g]uilt by association is a genuine concern whenever gang evidence is admitted.'" *See United States v. Harris*, 587 F.3d 861, 867 (7th Cir. 2009) (quoting *United States v. Montgomery*, 390 F.3d 1013, 1018 (7th Cir. 2004)); *see also United States v. Ellison*, 616 F.3d 829, 833 (8th Cir. 2010) ("Gang related evidence is inadmissible if its purpose is solely to prejudice the defendant or prove his guilt by association with unsavory characters." (internal quotation marks omitted)); *United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003) ("[A]n individual's [gang] membership . . . is likely to provoke strong antipathy in a jury."). The New Mexico Supreme Court explained that gang references may lead the jury to "'attach a propensity for committing crimes to defendants who are affiliated with gangs or [allow its] negative feelings toward gangs [to] influence its verdict.'" *State v. Torrez*, 2009-NMSC-029, ¶ 24, 146 N.M. 331, 210 P.3d 228 (quoting *United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996)). In addition, that court expressed concern that "evidence of gang affiliation could be used improperly as a backdoor means of introducing character evidence by associating the defendant with the gang and describing the gang's bad acts." *Id.* (internal quotation marks omitted).

¶27    In the appropriate context, "gang evidence has probative value warranting its admission over claims of prejudice." *See, e.g., Irvin*, 87 F.3d at 864; *see also Toki*, 2011 UT App 293, ¶¶ 42-45 (holding that gang evidence was relevant to prove an "in concert" enhancement); *Milligan*, 2010 UT App 152U, para. 3 (stating that gang evidence may be highly relevant to show motive or identity if the evidence makes it "more probable" that a defendant is culpable). Although the jury "is likely to associate gangs with criminal activity and deviant behavior, such that the admission of gang evidence raises the specter of guilt by association or a verdict influenced by emotion," that risk of prejudice "does not render it automatically inadmissible." *United States v. Santiago*, 643 F.3d 1007, 1011 (7th Cir. 2011) (internal quotation marks omitted). Instead, the evidence must be carefully examined to allow the State to present its case, without straying into marginally relevant and highly prejudicial areas. When that line is crossed, the defendant is entitled to a new trial. *See, e.g., United States v. Street*, 548 F.3d 618, 623, 629-33 (8th Cir. 2008) (holding that expert testimony "to illustrate the violent, lawless propensities of outlaw motorcycle gangs" was "excessive, unduly prejudicial, and in great part completely irrelevant to the charged offenses"); *People v. Bojorquez*, 128 Cal. Rptr. 2d 411, 415-16, 418 (Cal. Ct. App. 2002) (holding that evidence of the defendant's gang affiliation was probative of bias and credibility, but that it was prejudicial error to allow further testimony that the gang participated in illegal activity, including robbery, and that the gang killed witnesses who testified against it).

IV.  The Trial Court's Admission of the Gang Activity Evidence Was Not Prejudicial Error

¶28    Trial courts play an important role in determining whether and to what extent gang-related evidence should be admitted because they are in the best position to make these nuanced and fact-dependent decisions. *See State v. Sellers*, 2011 UT App 38, ¶ 23, 248 P.3d 70 ("[T]he trial court is in the best position to make initial judgments about the admissibility of evidence within the context of a trial."); *State v. Northcutt*, 2008 UT App 357, ¶ 17, 195 P.3d 499 ("[T]he trial court is in the best position to . . . determine whether to admit evidence of prior bad acts."). Therefore, in determining whether the trial court exceeded its discretion in admitting evidence of other bad acts, we review whether the trial court "scrupulously examined" "the admission of other bad acts evidence." *See State v. Nelson-Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120 (internal quotation marks omitted). If the trial court has carefully considered the issue, we defer to its advantaged position to assess the impact of the evidence in the context of the trial, absent an abuse

of discretion. *See State v. Burke*, 2011 UT App 168, ¶ 44, 256 P.3d 1102, *cert. denied*, 263 P.3d 390 (Utah 2011). But where a trial court fails to do so, we may assume it has exceeded its discretion. *See State v. Ferguson*, 2011 UT App 77, ¶ 18, 250 P.3d 89, *cert. denied*, 262 P.3d 1187 (Utah 2011). Nevertheless, we will not overturn the defendant's conviction unless the error was harmful. *See id.* ¶ 19; *State v. Hildreth*, 2010 UT App 209, ¶ 52, 238 P.3d 444 (McHugh, J., concurring) (undertaking a 404(b) analysis to determine whether the trial court's error in failing to conduct such an analysis was harmful).

¶29    In examining the evidence, a trial court must first decide whether it is "offered for a proper, noncharacter purpose." *See Nelson-Waggoner*, 2000 UT 59, ¶ 18. If the evidence's purpose is "only to show the defendant's propensity to commit crime," it must be excluded. *See id.* (internal quotation marks omitted). The court must then decide whether the evidence "meets the requirements of rule 402, which permits admission of only relevant evidence." *Id.* ¶ 19; *see also* Utah R. Evid. 401-402. Even if the evidence is relevant for a proper, noncharacter purpose, it "'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.'" *See Nelson-Waggoner*, 2000 UT 59, ¶ 20 (quoting the then-current version of Utah R. Evid. 403). To determine whether the bad acts evidence violates rule 403, courts consider a number of factors (the *Shickles* factors), which include the following:

> [T]he strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*State v. Shickles*, 760 P.2d 291, 295-96 (Utah 1998) (internal quotation marks omitted), *quoted in Nelson-Waggoner*, 2000 UT 59, ¶ 20.

¶30    High argues that the trial court did not scrupulously examine the Gang Activity Evidence both because the court failed to determine whether the evidence was offered for a proper, noncharacter purpose, and because it failed to apply the *Shickles* factors. *See Nelson-Waggoner*, 2000 UT 59, ¶¶ 16-20; *Shickles*, 760 P.2d at 295-96. High further contends that the error was prejudicial because the evidence was offered only to prove

his "propensity for engaging in violent gang activities" which "had a high probability of rousing the jury to overmastering hostility."

¶31   The State counters that the evidence is relevant and probative of the "in concert" enhancement, to rebut High's self-defense claim, and to explain the circumstances of the fight. The State also argues that a trial court need not evaluate each *Shickles* factor to conduct a proper rule 403 evaluation "as long as we can discern that it made a sufficient inquiry." *See State v. Harter*, 2007 UT App 5, ¶ 30, 155 P.3d 116. In the alternative, the State contends that even if the trial court improperly admitted the Gang Activity Evidence, any error was harmless because it was merely cumulative of other unchallenged evidence admitted at trial.

¶32   We begin our analysis by reviewing the trial court's deliberations with respect to the challenged evidence. The trial court's examination of the gang evidence began before trial when the State announced its intent to introduce six pieces of evidence relating to PVL: (1) that High is a member of PVL; (2) that High has "PVL" tattooed on his hand; (3) that Cristobal is a member of PVL; (4) that on May 20, 2009, High participated as a party to an assault, in concert, on the Trail; (5) that High knowingly committed the prior assault in concert with three or more others, including Cristobal; and (6) that PVL claims the Trail as its territory. Despite its position on appeal that 404(b) is inapplicable, the State argued at trial that each of these pieces of evidence was admissible under rule 404(b). In doing so, it identified the noncharacter purposes of the evidence, discussed its relevance, and argued that it was more probative than prejudicial, as required under a 404(b) analysis. The State assured the trial court that it was not trying to "bring in a bunch of evidence about gang stuff that is going to be detrimental to the defendants, because . . . that is a touchy issue." Instead, the State indicated that it wanted to "bring in the fact that the defendants have an association with PVL, to be able to help deal with the issues of whether they were acting in collusion[,] in concert with one or more persons."

¶33   In response, High's counsel discussed the three-part inquiry required under rule 404(b) and how it applied to the proposed evidence.[15] Although acknowledging that his tattoo was relevant to show that the initials on his wrist matched those shouted after the

---

[15]Neither the State nor High expressly referred to the *Shickles* factors in the trial court.

confrontation with Big Brother and Little Brother, High argued that the State could not introduce evidence that PVL stands for the name of a gang. High urged the trial court to exclude the evidence both because the State had not designated an expert on that point and because the evidence would be more prejudicial than probative. The State agreed that "it would be impermissible for the State to, in essence, go into what would be expert testimony to establish what is PVL," but asserted that if the defendants took the stand, it was entitled to obtain this information through them.

¶34 After considering the briefs and oral argument, the trial court permitted the State to introduce the proposed evidence that someone shouted "PVL" at the scene and that High had "PVL" tattooed on his hand.[16] With respect to the fact that the Trail was considered by PVL to be part of its territory, the trial court ruled that this evidence would be admitted only if the defendants testified. The trial court also excluded the defendants' prior felony convictions, reasoning that the fact and details of the convictions were more prejudicial than probative. However, the trial court explained that it would revisit the admissibility of the prior felonies if High and Cristobal testified. Finally, because the defendants had not yet decided to testify, the trial court was unwilling to decide whether doing so would "open the door" to further gang evidence, as suggested by the State.

¶35 Trial commenced, and the jury heard some Gang Affiliation Evidence. When the defendants indicated their intent to testify on their own behalf, the trial court conducted another hearing outside the presence of the jury. The trial court first invited argument on the admissibility of the defendants' criminal records. The defendants asserted that this question should be resolved under rule 609 of the Utah Rules of Evidence, governing the impeachment of a witness by evidence of his conviction of crime. Arguing against admissibility under rule 609, High addressed the following factors: (1) the extent to which the evidence bears on the defendant's propensity to testify truthfully; (2) the recentness or remoteness of the prior conviction; (3) the similarity of the prior crime to the charged crime; (4) the importance of credibility to the prosecution; and (5) the importance of the accused's testimony.

¶36 Next, the trial court raised the separate issue of the State's ability "to probe regarding gang affiliations and a variety of other things" and invited the State to

---

[16]High does not challenge this evidence on appeal.

explain how the evidence related to rules 609 and 404(b) of the Utah Rules of Evidence. The State first conceded that because the prior felony conviction is "exactly the same felony as [the charged crime] . . . clearly under a 609 analysis" admitting the details of the conviction "would be unduly prejudicial." It argued, however, that if the defendants took the stand, rule 404(b) did not prohibit the State from asking "a little bit about what is the nature of [PVL]." In particular, the State claimed that the evidence was needed to prove that the defendants acted in concert, to refute their self-defense claims, and because the fight began just after Big Brother called the defendants "wannabe gangsters." High argued that, despite its relevance, all of the gang evidence was unfairly prejudicial beyond its probative value.

¶37     Before announcing its decision, the trial court correctly noted that evidentiary rules 609, 404(b), and 403 were all implicated by the proposed evidence and that some of the considerations underlying the rules overlapped. Looking at the similarity between the prior felony and the charges at issue under rule 609, the trial court concluded that the fact of the felony conviction could be admitted but that the details would be excluded. With respect to the gang evidence, the trial court ruled, "[B]ecause we have two or more acting in concert under the charges themselves; and by virtue of the fact that there has already been evidence that has been admitted regarding a tattoo on . . . High's hand, . . . [and that] someone yelled something about PVL, that can be explored." The court later clarified that the State could ask the defendants "generic types of questions" about "what is PVL, and how long have you been associated with it, and are you both . . . members, do you know each other in connection with that." Due to the difficulty of predicting how the defendants would testify, however, the trial court "instructed Counsel that they're going to have to object if they believe that it oversteps into areas that . . . can't be explored." The jury was then reseated and the trial continued.

¶38     When High objected to the Gang Activity Evidence, the sidebar conference with the trial court was not recorded. At the close of evidence, High placed the substance of that discussion on the record and asked for a mistrial based on the introduction of the Gang Activity Evidence. The trial court denied the motion, explaining,

> [W]hen you have someone that's involved in an assault,
> whether it's a defense, whether they initiate it, and they have
> gang tattoos on their hands, or paraphernalia or anything

else, and when at the conclusion of that assault . . . they yell
out the affiliation[,] then they take the witness stand in
connection with the case, it opens the door.

¶39    It is apparent from this record that the trial court was aware of the sensitivity of
the gang evidence, allowed the parties to be heard regarding its admissibility at various
stages of the proceedings, and carefully considered its relevance and prejudicial effect.
Although the parties failed to mention the *Shickles* factors in the briefs or argument to
the trial court, many of them were considered and discussed. For example, in deciding
whether the details of High's prior felony conviction should be admitted under rule 609,
the trial court considered similarity, remoteness, and whether the risk of prejudice was
outweighed by the probative value of the evidence. While there is no discussion on the
record about the strength of the evidence, the fact that High and Cristobal had pleaded
guilty to the prior felony and were punished accordingly was known to both the trial
court and the parties. Likewise, the information included the date of the prior
conviction and thus, the interval of time between it and the events from which the
current charges arose.[17] The trial court also considered the relevance of the evidence to
the "in concert" enhancement. With respect to the prejudicial nature of the details of
the prior felony conviction, the trial court concluded that they were so similar as to be
unfairly prejudicial beyond their probative value and the State agreed. Thus, we
conclude that the trial court scrupulously examined the details of the prior felony
convictions before holding that they could not be admitted.

¶40    Despite the trial court's ruling that the State could not introduce the fact that
High and Cristobal had been convicted of a felony as a result of their joint participation
in a fight on the same Trail where the charged offenses occurred, it permitted the State
to elicit much of that same evidence from High on cross-examination. High testified
that he had participated in gang fights over territory in Provo during his four-year
membership in PVL. As a result, some of the details excluded as too prejudicial under
rule 609 because they were "exactly the same" crime as charged were admitted under
rule 404(b). While this reflects an apparent inconsistency between the trial court's
rulings, the discrepancy does not equate with error. A trial court may modify or
reverse a prior ruling any time before final judgment. *See IHC Health Servs., Inc. v.*

---

[17]The defendants had entered the guilty pleas only about two months before the
altercation with the two brothers.

*D & K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588. This allows the trial court to evaluate the current circumstances and, with respect to evidentiary rulings, assess admissibility in light of the quality and quantity of the evidence previously admitted. However, because the record does not reflect the trial court's reasoning, we assume, for the purpose of analysis only, that it did not scrupulously examine the Gang Activity Evidence. Therefore, we now proceed to the question of whether the admission of the Gang Activity Evidence was harmful.

## V. The Introduction of the Gang Activity Evidence Was Harmless

¶41 We will not disturb the jury's verdict unless "the likelihood of a different outcome [is] sufficiently high to undermine confidence in the verdict." *See State v. King*, 2010 UT App 396, ¶ 23, 248 P.3d 984 (internal quotation marks omitted); *see also* Utah R. Crim. P. 30(a) ("Any error . . . which does not affect the substantial rights of a party shall be disregarded."). "'Harmless errors are those that are sufficiently inconsequential so no reasonable likelihood exists that the error affected the outcome of the proceedings.'" *State v. Ferguson*, 2011 UT App 77, ¶ 19, 250 P.3d 89 (quoting *C.T. ex rel. Taylor v. Johnson*, 1999 UT 35, ¶ 18, 977 P.2d 479), *cert. denied*, 262 P.3d 1187 (Utah 2011). We must therefore decide whether the Gang Activity Evidence was so prejudicial that it undermines our confidence in the verdict. To determine that a trial court's failure to conduct a proper 404(b) examination was harmless, one approach is to assess whether the evidence would have been admitted had the trial court undertaken the proper review. Put simply, if a scrupulous examination would have resulted in the evidence being admitted, the trial court's failure to conduct that examination has not harmed the defendant. In the alternative, we may assume that a scrupulous examination would have resulted in the exclusion of the evidence but that there is no reasonable likelihood that the assumed error affected the outcome. *See id.* ¶¶ 19-20; *State v. Hildreth*, 2010 UT App 209, ¶ 52, 238 P.3d 444 (McHugh, J., concurring). Here, we use both methods of assessing prejudice, determining that some evidence would have been admitted despite application of the *Shickles* factors, and that other evidence was not reasonably likely to have affected the outcome of the proceeding.

A. Some of the Gang Activity Evidence Was Properly Admitted Under Rule 404(b)

¶42 We now examine the Gang Activity Evidence under rule 404(b) to determine whether it was properly admitted. For purposes of this analysis, we consider the Gang

Activity Evidence challenged by High to consist of three facts:[18] (1) that the braver and more aggressive a PVL member is, the higher his status in the gang (status testimony); (2) that one of PVL's purposes is to fight rival gangs for territory (rival gang testimony); and (3) that High has participated in such fights and that he understands that this is probably illegal (illegal prior fights testimony).[19]

    1.      The Fact that PVL Members Gain Status by Engaging in Aggressive Behavior

¶43    To begin, we address the status testimony. The first step of that analysis is to determine whether the evidence was offered for a proper, noncharacter purpose. *See State v. Killpack*, 2008 UT 49, ¶ 45, 191 P.3d 17 (stating that evidence of other bad acts is admissible if it "(1) is relevant to, (2) a proper, non-character purpose, and (3) does not pose a danger for unfair prejudice that substantially outweighs its probative value" (internal quotation marks omitted)). We agree with the State that the status testimony was relevant to the proper noncharacter purpose of proving motive. *See, e.g., People v. Garcia*, 85 Cal. Rptr. 3d 393, 408-09 (Cal. Ct. App. 2008) (holding that an expert's testimony that "gang members increase their respect within their set and the community through acts of violence and intimidation" was properly admitted to prove motive and intent); *Willoughby v. State*, 626 S.E.2d 112, 114 (Ga. 2006) (holding that the trial court did not err in admitting evidence that "gang members could advance in rank by committing crimes" to establish motive); *State v. Yarbrough*, 210 P.3d 1029, 1038 (Wash. Ct. App. 2009) ("The gang-related evidence was also highly probative of the State's theory of the case . . . that [the defendant] murdered [the victim] to advance his

---

[18]High does not challenge the evidence that Provo is within the territory claimed by PVL (territory testimony). This is the only piece of evidence challenged by codefendant Cristobal that is not challenged by High. We therefore address this issue in our decision in *State v. Cristobal*, 2012 UT App 181, issued with this decision.

[19]We acknowledge that the state's argument that the admissibility of the Gang Activity Evidence is not governed by rule 404(b) may be more persuasive with respect to some of this testimony, particularly the status testimony. Nevertheless, we discuss it under rule 404(b) because a key part of the rule 404(b) examination is the balancing of its probative value against the danger of unfair prejudice required under rule 403, the evidentiary rule that the State asserts is more properly applicable. *See supra* ¶ 29.

position in his gang."). *But see State v. Ra*, 175 P.3d 609, 615 (Wash. Ct. App. 2008) (holding that where the State did not establish that the defendant was a gang member, the trial court committed prejudicial error in admitting evidence that "portrayed [the defendant] and his companions as inherently 'bad guys,' willing to commit the most serious acts of violence to elevate their status in the group").

¶44    Furthermore, the status testimony made it more likely that High and Cristobal instigated the conflict.  As a result, the evidence is also admissible under rules 401 and 402.  *See* Utah R. Evid. 401 ("Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."); Utah R. Evid. 402 ("Relevant evidence is admissible unless any of the following provides otherwise:  the United States Constitution; the Utah Constitution; a statute; or rules applicable in courts of this state. Irrelevant evidence is not admissible.").

¶45    We are likewise convinced that the status testimony "does not pose a danger for unfair prejudice that substantially outweighs its probative value." *Killpack*, 2008 UT 49, ¶ 45 (internal quotation marks omitted); *see also* Utah R. Evid. 403.  In reaching that determination, we consider the *Shickles* factors to assess admissibility under rule 403. *See State v. Allen*, 2005 UT 11, ¶ 24, 108 P.3d 730 (identifying the *Shickles* factors).  First, "the strength of the evidence" is significant because High, a gang member with knowledge of these matters, provided the information, and it was against High's interests to do so. *See id.* (internal quotation marks omitted).  However, the testimony does not discuss a particular event, and therefore provides no basis to assess its "similarit[y]" to the charged crime. *See id.*  In addition, High agreed with the State's present-tense statement, "So the more that you do or the braver you are or the more aggressive you are, that gives you status."  Thus, there also appears to be no "interval of time" between the other act and the charged offense. *See id.*  We also consider "the need for the evidence" and "the efficacy of alternative proof." *See id.* (internal quotation marks omitted).  As High contends, the conflicting  testimony here created a credibility contest between the brothers and the defendants.  While the State could argue that High and Cristobal attacked because they were insulted by Big Brother's "wannabe gangsters" comment, the jury may not have been convinced due to the fact that Big Brother had a criminal record and because the police found a pool cue at the scene consistent with the defendants' version of events.  Thus, the added fact that the PVL members would achieve greater status within the gang for attacking Big Brother and

Little Brother was necessary to explain the defendants' motivation. *Cf. State v. Toki*, 2011 UT App 293, ¶ 42, 263 P.3d 481 (concluding that some gang evidence was properly introduced to prove identity where a witness who could provide alternative proof of identity might not be found credible by the jury because of inconsistencies in her testimony), *cert. denied*, 272 P.3d 168 (Utah 2012). For the same reasons, the State needed the evidence to refute High's and Cristobal's claims that they acted in self-defense.

¶46    By the time the State elicited this testimony, the jury knew of High's and Cristobal's gang membership, the fact that they shouted "PVL" when fleeing from the scene, that High bears the initials "PVL" on his hand, and that PVL is a gang. The added fact that members of PVL gain status through aggressive behavior, including fighting, was not likely to increase significantly whatever prejudice the defendants had already suffered due to the gang evidence already admitted. *See id.* ¶¶ 45-46.

¶47    After carefully considering the evidence under rule 404(b), including the application of the *Shickles* factors, we conclude that the trial court properly admitted the status testimony. Therefore, High was not prejudiced by its admission.

        2.      The Fact that One of PVL's Purposes Is to Fight Rival Gang Members for Territory

¶48    We next consider the rival gang testimony. Although evidence that gangs fight each other may be probative to rebut a self-defense claim in some instances, *see, e.g.*, *Utz v. Commonwealth*, 505 S.E.2d 380, 387 (Va. Ct. App. 1998) (holding that expert testimony about gang culture was admissible to rebut a self-defense claim), it had limited utility for that purpose here because nothing in the evidence suggests that either brother was a member of a rival gang. *See State v. Scott*, 213 P.3d 71, 75-76 (Wash. Ct. App. 2009) (holding that gang affiliation evidence should have been excluded where the prosecution did not also present evidence connecting the defendant's gang membership to the crime). Thus, the evidence was not specifically probative of the issues in the case. *Cf. United States v. Irvin*, 87 F.3d 860, 864-66 (7th Cir. 1996) (holding that evidence of gang affiliation was irrelevant and highly prejudicial where no evidence linked the gang to the crime); *Smith v. State*, 355 S.W.3d 138, 154-55 (Tex. App. 2011) (holding that evidence of the defendant's gang affiliation was properly excluded where neither party "adduced evidence that the altercation leading to [the victim's] death was gang-related"). Furthermore, there is some risk that the jury would infer that High

participated in such fights in the past and acted in accordance with that aggressive conduct on the night of the encounter with the brothers. For these reasons, we assume for the purpose of our analysis that this evidence should have been excluded.

3.    The Fact that High Participated in Fights with Rival Gangs Despite His Understanding that It Was Probably Illegal

¶49    We next consider whether the evidence that High had participated in fights against rival gangs, despite his understanding that such activity was probably illegal, should have been excluded. First, when the trial court considered High's prior conviction for engaging in a gang fight on the Trail, it excluded such details as unduly prejudicial. Second, the evidence implicates High directly in violent conduct that he admits might be illegal. Third, because the fights were between rival gangs, the evidence has limited relevance to the motive for attacking non-gang members like the brothers. Fourth, the evidence may imply that High is a violent person who violates the law with impunity and, therefore, had the propensity to instigate the present conflict. Consequently, we assume for purposes of our analysis that the trial court should have excluded the illegal prior fights evidence. *Cf. State v. Milligan*, 2010 UT App 152U, paras. 4-5 (mem.) (holding that an explanation of general gang practices relating to the punishment of a "snitch" was properly admitted, but concluding that the trial court erred when it admitted evidence that the defendant, himself, had displayed his gun to warn a fellow gang member to "take the punishment he had coming for a violation of gang rules"), *cert. denied*, 238 P.3d 443 (Utah 2010).

B.    Any Error in Admitting the Evidence Was Harmless

¶50    Despite assuming that the rival gang and illegal prior fights testimony should have been excluded, we will not overturn the jury's verdict "if the admission of the evidence did not reasonably [a]ffect the likelihood of a different verdict." *See State v. Houskeeper*, 2002 UT 118, ¶ 26, 62 P.3d 444. In doing so, we first acknowledge that this is not a case where the evidence of guilt was overwhelming, even in the absence of the evidence. *Cf. State v. Ferguson*, 2011 UT App 77, ¶ 19, 250 P.3d 89 (concluding that error in admitting 404(b) evidence was harmless because the other evidence of the defendant's guilt was overwhelming), *cert. denied*, 262 P.3d 1187 (Utah 2011). High's

conviction was based almost entirely on the brothers' testimony,[20] making witness credibility the cornerstone of the case. In addition, the physical evidence of the brothers' injuries was consistent with either version of events, and there were no disinterested witnesses who could testify as to what transpired. Ultimately, the jury had to decide whether the brothers or the defendants were telling the truth. While the fact that both High and Cristobal had prior felony convictions may have weighed against their credibility in the eyes of the jury, Big Brother's admission that he had prior convictions for drug possession with intent to distribute, burglary, and shoplifting was likely also concerning to the jury.

¶51    Even if the evidence had been excluded, however, the jury would still have heard unchallenged and properly admitted gang evidence, including testimony that PVL is a street gang; that High is a member of PVL; that Cristobal was a member until shortly before the incident; that High, Cristobal, and the Third Man shouted "PVL" and flashed "signs" while fleeing; and that High had a "PVL" tattoo on his hand. The jury also knew that High and Cristobal had been members of the PVL gang together for four years and that PVL stood for a gang known in English as the "Provo Neighborhood Crazies." Furthermore, we have concluded that the trial court properly admitted evidence that PVL members fight to gain status within the organization, which considers Provo its territory. While the extent of this evidence suggests that the State had little need for additional gang evidence, it also lessens the impact of any improperly admitted evidence.

¶52    In light of High's long-term gang affiliation and his admitted participation in a violent altercation that left Big Brother bleeding from a head wound, the fact that High has been in gang fights in the past, despite knowing that they are probably illegal, was unlikely to increase by any significant degree the negative impact of the properly admitted gang evidence. *See State v. Milligan*, 2010 UT App 152U, para. 5 (mem.) (holding that "in light of the other evidence properly before the jury," the improper gang evidence had no "likelihood of affecting the outcome of the proceedings"), *cert. denied*, 238 P.3d 443 (Utah 2010); *see also United States v. Santiago*, 643 F.3d 1007, 1012 (7th Cir. 2011) (holding that improper admission of some gang evidence was harmless error because "[a]ny impact [that] the additional statements regarding the gang had on the

---

[20]The jury also heard testimony by two investigating police officers who were not present during the altercation.

jury would have been very slight"), *cert. denied.*, 132 S.Ct. 1062 (2012); *Gutierrez v. State*, 32 A.3d 2, 16 (Md. 2011) (holding that although evidence that the MS-13 gang was particularly violent was irrelevant, its improper admission was harmless because "[o]ther properly admissible evidence established that [the defendant] was affiliated with MS-13 and had traveled into rival gang territory looking for someone to kill as part of his initiation").

¶53    In addition, the State did not refer to any of the gang evidence in summation and the improper evidence is contained in seventeen lines of testimony over a two-day trial with over 400 pages of transcript.  *See State v. Toki*, 2011 UT App 293, ¶ 47, 263 P.3d 481 (holding error in improperly admitting gang evidence was harmless where it was "a small part of the big picture—just thirteen pages out of the 681-page transcript"), *cert. denied*, 272 P.3d 168 (Utah 2012); *Milligan*, 2010 UT App 152U, para. 6 ("[T]he periodic references to gangs—the vast majority of which were proper—were of short duration and were spread out over three days of trial").  Furthermore, the trial court instructed the jury that it could not consider the gang evidence "as proof that either Defendant is prone or inclined to commit crimes generally or the crimes charged in this case specifically," admonished the jury that "[n]either Defendants' character traits are relevant in this trial," and explained that the gang evidence was admissible to show only "motive, opportunity, intent, preparation, plan, knowledge, or identity."  *Cf. State v. Widdison*, 2000 UT App 185, ¶ 31, 4 P.3d 100 (reasoning that the trial court's jury instruction as to the proper use of bad acts evidence "limited its effect").  We assume that the jury acted in accordance with this instruction in rendering its verdict.  *See State v. Nelson*, 2011 UT App 107, ¶ 4, 253 P.3d 1094 (acknowledging the general presumption that "'a jury will follow the instructions given it,'" unless the facts indicate otherwise (quoting *State v. Menzies*, 889 P.2d 393, 401 (Utah 1994))), *cert. denied*, 255 P.3d 684 (Utah 2011).  Finally, the trial court limited the State's questioning to some degree and excluded evidence that the defendants' prior felony convictions arose out of their joint participation in a fight on the Trail.

¶54    Considering all of these factors, the presumed improper admission of the rival gang and illegal prior fights testimony does not undermine our confidence in the jury's verdict.  While we caution against the cumulative and excessive use of such evidence, under the particular facts and circumstances present here, we are convinced that any presumed error was harmless.  *See, e.g., Toki*, 2011 UT App 293, ¶¶ 47-48; *Milligan*, 2010 UT App 152U, para. 6.

CONCLUSION

¶55    Even assuming that some of the Gang Activity Evidence was improperly admitted, we are convinced that any assumed error was harmless because of the extensive properly admitted gang evidence, the trial court's limiting instruction to the jury, the State's restraint in not mentioning the gang evidence during closing argument, and the minimal references to the improper evidence in the context of the entire trial.

¶56    Affirmed.


_____
Carolyn B. McHugh,
Presiding Judge

-----

¶57    WE CONCUR:


_____
William A. Thorne Jr., Judge


_____
Michele M. Christiansen, Judge