2014 UT App 59

**STATE of Utah, Plaintiff and Appellee,**

v.

**Patrick F. DURAN, Defendant and Appellant.**

**No. 20120875–CA.**

Court of Appeals of Utah.

March 20, 2014.

Samuel P. Newton, for appellant.

Sean D. Reyes and Kris C. Leonard, for appellee.

Senior Judge RUSSELL W. BENCH authored this Memorandum Decision, in which Judges JAMES Z. DAVIS and JOHN A. PEARCE concurred.[1]

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

## Memorandum Decision

BENCH, Senior Judge:

¶ 1 Defendant Patrick F. Duran appeals from his conviction for possession of a controlled substance. He argues that his trial counsel was ineffective in failing to file a motion to suppress and in failing to object at trial to certain gang-related statements. We affirm.

¶ 2 "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark,* 2004 UT 25, ¶ 6, 89 P.3d 162. "[A] defendant raising an ineffectiveness claim must show first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant." *State v. Kelley,* 2000 UT 41, ¶ 25, 1 P.3d 546 (citation and internal quotation marks omitted). "Failure to raise futile objections does not constitute ineffective assistance of counsel." *Id.* ¶ 26.

## I. Motion to Suppress

 ¶ 3 Late one night in September 2010, three officers from the Ogden Metro Gang Unit were conducting surveillance at an inn in Ogden, Utah, after receiving a tip that drugs were being sold out of that location. The first officer was stationed in an alley behind the inn. He saw two men walking near the inn and then saw the men change their direction of travel upon seeing him. The first officer alerted the other two officers via radio that the two men were heading their way, and two of the officers watched the two men jaywalk across the street in front of the inn. The second officer approached one of the men, and the other man continued walking, looking back at the second officer. The third officer then approached this man, and as he did so, he saw the man walk between two cars and drop something white. This third officer recognized the man who dropped something as Duran and told him to stand and wait in front of his unmarked police car. The officer then walked over to see what Duran had dropped and retrieved a white paper tissue that contained methamphetamine. Duran now argues that he was unconstitutionally seized because the officer did not have reasonable suspicion of a drug violation when he detained Duran in front of the police car.

 ¶ 4 Certainly "[t]he Fourth Amendment's protections against unreasonable searches and seizures 'extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.'" *State v. Markland,* 2005 UT 26, ¶ 10, 112 P.3d 507 (quoting *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). When police violate this protection, evidence obtained therefrom must generally be excluded. *State v. Deherrera,* 965 P.2d 501, 503–04 (Utah Ct.App.1998). However, there are certain permissible levels of police stops. "[I]t is settled law that 'a police officer may detain and question an individual when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" *Markland,* 2005 UT 26, ¶ 10, 112 P.3d 507 (quoting *State v. Chapman,* 921 P.2d 446, 450 (Utah 1996)).

¶ 5 Duran's argument focuses on whether the officer had reasonable, articulable suspicion that Duran was involved in drug-related wrongdoing sufficient to justify his detention. Duran concedes, however, that the officer could have properly concluded that Duran jaywalked across the street[2] and that he dropped something on the ground. These facts alone are evidence of wrongdoing. *See* Utah Code Ann. § 41–6a–1003(3) (LexisNexis 2010) ("Between adjacent intersections at which traffic-control signals are in operation, a pedestrian may not cross at any place except in a marked crosswalk."); *id.* § 76–10–2701(1) (2012) ("A person may not throw, deposit, or discard, or permit to be dropped, thrown, deposited, or discarded on any park, recreation area, or other public or private land, or waterway, any ... trash or garbage, paper or paper products, or any other substance which would or could mar or impair the scenic aspect or beauty of the land in the state...."). Thus, even if reasonable suspicion were lacking as to any drug-related wrongdoing, the facts observed by the officer gave rise to reasonable suspicion that Duran had committed other offenses. The brief

---

**2.** Indeed, Duran has consistently admitted that he *did* jaywalk across the street.

detention was therefore allowed. Because Duran's Fourth Amendment rights were not violated, a motion to suppress on these grounds would have been unsuccessful, and trial counsel was not ineffective for failing to file such a futile motion, *see State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546.

## II. Gang References

¶ 6 Duran also challenges his trial counsel's failure to object to several gang references on relevance and prejudice grounds. He argues that the gang references were not relevant, *see generally* Utah R. Evid. 402 ("Irrelevant evidence is not admissible."), and that even if they were, the references should have been excluded due to their potential for unfair prejudice, *see generally id.* R. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice. . . .").

¶ 7 Mention of gangs was limited to one piece of information, expressed three different times over the course of the trial. First, the prosecutor argued in his opening statement,

> As [Duran] spoke to [the officer,] he admitted that the tissue—the substance in the tissue was his. He said he had bought it from a Jose in South Ogden. He couldn't give any more detail than that other than to say that Jose was part of a Mexican gang.

When the officer was questioned at trial, the same reference to Jose was mentioned:

> Then [I] brought [Duran] back to my car, gave him his Miranda rights. He waived his rights, wanted to speak to me. We started talking about the drugs. He did tell me that it was his, and that he had purchased it from Jose. He says Jose lived in South Ogden. He couldn't give me an address. He says that Jose was part of Pisas. Pisas are part of the Mexican cartel that deliver and deal drugs. So that's stuff that I've known from past experiences because I used to work with the narcotics strike force. So that was about it.

Finally, in closing arguments, the prosecutor stated,

> The further testimony was that [Duran] spoke to [the officer]. He admitted to knowing to possessing the methamphetamine. He admitted to [the officer] that he had bought it from a gentleman in south Ogden, somebody named Jose, somebody who belonged with the Pisas Mexican gang. Those are all—

Defense counsel then objected to the gang reference on the ground that there had been no testimony supporting it. The trial court stated that a similar mention had been made in opening statements and left it up to the jury members and their recollection as to whether testimony had been offered on that point.

¶ 8 The one piece of gang-related information here, that the person Duran purchased the drugs from was associated with Pisas, is relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Utah R. Evid. 401. "[E]ven evidence that is only slightly probative in value is relevant." *State v. Martin,* 2002 UT 34, ¶ 31, 44 P.3d 805. The challenged evidence here satisfies this low standard of relevance. The evidence that Duran said he bought the drugs from a member of Pisas—a gang associated with a drug cartel—arguably supported the prosecution's assertion that Duran *knowingly* possessed the methamphetamine and helped establish the specifics of Duran's confession.

¶ 9 And we are not convinced that the gang-related information was unfairly prejudicial. "[W]hile no Utah precedent has stated that gang references automatically taint juries, we have viewed such evidence with caution due to the risk that it may carry some unfair prejudice." *State v. High,* 2012 UT App 180, ¶ 26, 282 P.3d 1046 (citation and internal quotation marks omitted). But certainly the risk of unfair prejudice is far greater in those cases where the evidence shows a defendant's own membership in or affiliation with a gang, as opposed to simply referencing some limited interaction a defendant had with a gang member. *Cf. id.* (" '[A]n individual's [gang] membership . . . is likely to provoke strong antipathy in a

jury.' " (alterations and omission in original)) (quoting *United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir.2003)); *id.* ("[G]ang references may lead the jury to 'attach a propensity for committing crimes to defendants who are affiliated with gangs or [allow its] negative feelings toward gangs [to] influence its verdict.' " (second and third alterations in original) (quoting *State v. Torrez*, 2009–NMSC–029, ¶ 32, 146 N.M. 331, 210 P.3d 228)). Here, we see little risk of unfair prejudice where there was no suggestion made that Duran was a member of Pisas or in any way affiliated with it. The evidence was only that Duran bought drugs from someone in South Ogden who he knew was a member of Pisas. Indeed, the evidence was that Duran knew nothing else about this Jose, actually supporting a contrary inference that Duran was *not* affiliated with Pisas. And it is unlikely that Duran's purchase of drugs from a gang member (as opposed to a non-gang-affiliated drug dealer) would have influenced the jury's finding that Duran possessed the methamphetamine.

¶ 10 Thus, considering the character of the gang references and the lack of any suggestion that Duran himself was affiliated with the gang, we do not see that the evidence's relevance was substantially outweighed by a danger of unfair prejudice. Therefore, any objection on prejudice grounds would have been futile and defense counsel was not ineffective for failing to make such an objection, *see State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546.

¶ 11 Further, even were we convinced that the gang-related references were improper, we would determine that those statements were harmless. We do not agree with Duran that the prosecution's treatment of Jose's gang membership can be characterized as "extensive highlighting." In each of the three references, Jose's gang affiliation was briefly mentioned as a supporting detail, with the speaker quickly moving on from that point to other material. Each reference was only a few lines of the 161–page transcript. These factors support our determination that the gang references here were harmless. *See State v. Toki*, 2011 UT App 293, ¶¶ 47–48, 263 P.3d 481 (determining that the introduction of unfairly prejudicial gang-related evidence was harmless where, among other factors, "the prosecutor did not take unfair advantage of the gang-related testimony" and the evidence "was a small part of the big picture—just thirteen pages out of the 681–page transcript").

¶ 12 Affirmed.