**2017 UT App 116**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,

*v.*

TIMOTHY JAMES TRUJILLO,
Appellant.

Opinion
No. 20150468-CA
Filed July 13, 2017

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 131907893

Nathalie S. Skibine and Christopher J. Jones,
Attorneys for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

ORME, Judge:

¶1      Timothy James Trujillo appeals his conviction for retaliation against a witness, victim, or informant, a third degree felony. *See* Utah Code Ann. § 76-8-508.3(2) (LexisNexis 2012). On appeal, Trujillo argues that his statements to police did not constitute a threat; that any threat he might have made was not directed against a witness, victim, or informant; and that the trial court erroneously admitted evidence of gang affiliation. We affirm.

BACKGROUND[1]

¶2    While on patrol one evening, a police officer encountered an intoxicated minor who appeared to have been assaulted. Although several other people were nearby, this initial officer determined that none of them were the culprits. He cited the minor for underage drinking and left. Later that night, the initial officer returned to the scene after receiving a report of a man wielding a knife.

¶3    Upon arrival, the initial officer saw two groups of people arguing. One of these groups included the minor encountered previously, the minor's brother, Trujillo, and another man. The other group consisted of neighbors. The initial officer detained the minor and his brother and told Trujillo and the other man to leave. After further surveying the scene, the initial officer located three butcher knives and called for backup. When the backup officers arrived, the initial officer told them that Trujillo and the other man might be the owners of the knives, and he gave the backup officers their likely location.

¶4    After locating Trujillo and the other man, the backup officers asked both individuals to speak with them, but they ran inside a nearby house. The officers followed, knocked on the door, and announced that they were police officers. They received no response. Fearing the men might retrieve weapons, the officers kicked down the door. The backup officers arrested Trujillo and the other man and then confirmed their identities with the initial officer, who informed Trujillo and the other man that they were being charged with aggravated assault and failing to stop at the command of a police officer.

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

¶5     At this point, Trujillo began to argue with the officers and proclaim his innocence. After Trujillo brought up the neighbors, the officers told Trujillo that the neighbors had not been involved in the minor's assault, that they were trying to help the minor, and that Trujillo should "stay away from them." Trujillo responded by saying that "if I'm being charged with [aggravated assault]," then "my boys will be paying [them] a visit . . . and it's [the officers'] fault." Trujillo repeated this several times before continuing, "Do you expect me to go to . . . jail and nothing happen?"

¶6     The State charged Trujillo with one count of retaliation against a witness, victim, or informant. Following his bindover on the charge, Trujillo filed a motion to quash, arguing that the State did not present sufficient evidence that he made a threat of harm. The trial court denied the motion. Later, the State filed a motion in limine, seeking leave to admit evidence of Trujillo's gang affiliation because of its importance in demonstrating that Trujillo's comments constituted a threat of harm. The trial court granted the motion. At trial, the State called one of the backup officers as an expert witness, and he testified as to the history of gangs in prison, gang culture generally, and Trujillo's role as a leader in the gang with which he was affiliated. The jury convicted Trujillo, and the trial court sentenced him to an indeterminate prison term not to exceed five years. Trujillo appeals.

ISSUES AND STANDARDS OF REVIEW

¶7     Trujillo first claims that there was insufficient evidence to support a conclusion that his statements constituted a threat. "In assessing a claim of insufficiency of the evidence, 'we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury.'" *State v. Cruz*, 2016 UT App 234, ¶ 72, 387 P.3d 618 (quoting *State v. Maestas*, 2012 UT 46, ¶ 302, 299 P.3d 892).

¶8     Trujillo next asserts that, under the plain language of the retaliation statute, a threat cannot be directed against a witness, victim, or informant unless that threat is communicated directly to such a person. Whether a threat must be communicated to a witness, victim, or informant before it will trigger criminal liability raises a question of statutory interpretation, which we review for correctness. *See State v. Davis*, 2011 UT 57, ¶ 16, 266 P.3d 765.

¶9     Finally, Trujillo argues that the trial court erroneously admitted evidence of his gang affiliation. "[W]e review a trial court's decision to admit or exclude specific evidence for an abuse of discretion." *State v. Cruz-Meza*, 2003 UT 32, ¶ 8, 76 P.3d 1165.

ANALYSIS

I. Trujillo's Statements to Police Constituted a Threat.

¶10    Trujillo first claims that his statements were not threats. Rather, he suggests that his words "were more akin to a confession of retaliatory feelings." An individual is guilty of retaliation against a witness, victim, or informant if, "believing that an official proceeding or investigation is pending, is about to be instituted, or has been concluded," he or she "makes a threat of harm"; "directs the threat or action . . . against a witness," victim, or informant; and directs the threat "as retaliation or retribution against the witness, victim, or informant." Utah Code Ann. § 76-8-508.3(2)(a)–(b) (LexisNexis 2012).

¶11    The initial officer testified that, when he arrived at the house where the backup officers found and detained Trujillo, Trujillo was "arguing and yelling about someone having to pay." After being arrested, Trujillo exclaimed, "Do you expect me to go to . . . jail and nothing happen?" Trujillo completed his

tirade by warning the officers that if he was charged with aggravated assault, his "boys will be paying [the neighbors] a visit," which would be the officers' fault. One backup officer testified that he regarded the threat as "quite serious" because of Trujillo's leadership role in his gang. Given that younger gang members are often eager to "gain favor" with and "impress the leaders," the officer feared retaliation against the neighbors on Trujillo's behalf.

¶12 At trial, the backup officer testifying as an expert witness stated that gangs and their members have a tendency to react violently to perceived "slights." After learning more about the events of that night, the jury could have inferred that Trujillo was angry with the neighbors because he believed that they were involved in the assault of the minor, because he believed they reported the knives, because they were arguing with his gang's members, or simply because he was being arrested. Regardless, Trujillo made a conditional statement that if he was arrested for aggravated assault, then his "boys" would pay the neighbors a visit. This statement's inverse, then, is that if the officers did not arrest him for aggravated assault, then his boys would not pay the neighbors a visit. From this, the jury could reasonably infer that Trujillo's statement was a threat against the neighbors and that, in making it, Trujillo intended to pressure the arresting officers into dropping the matter. We therefore conclude that there was sufficient evidence for a jury to conclude that Trujillo's statements constituted a threat.

## II. Trujillo Directed His Threat Against a Witness, Victim, or Informant.

¶13 The applicable statute provides, in relevant part, that "[a] person is guilty of . . . retaliation against a witness, victim, or informant" if he "makes a threat of harm" and "directs the threat against" any of the described persons. Utah Code Ann. § 76-8-508.3(2) (LexisNexis 2012). Trujillo claims that the statute's plain language requires that "the threat will reach its target." Put

simply, Trujillo argues that threats can be directed against a witness, victim, or informant only if the threat is communicated to that witness, victim, or informant.

¶14    When interpreting a statute, we look first to its plain language. *See R.A. McKell Excavating, Inc. v. Wells Fargo Bank, NA*, 2004 UT 48, ¶ 8, 100 P.3d 1159. "A starting point for our assessment of ordinary meaning is the dictionary." *State v. Bagnes*, 2014 UT 4, ¶ 14, 322 P.3d 719. Merriam-Webster's Dictionary defines "against" as "in opposition or hostility to." *Against*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/against [https://perma.cc/MQ2M-XVKM]. Trujillo's argument would be persuasive if the statute required that an individual make a threat *to* a witness, victim, or informant, as "to" is used "to indicate the receiver of an action." *To*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/to [https://perma.cc/U64R-95XR]. But the statute uses the term "against" instead of "to," and it is devoid of any language suggesting that the threat must be made with the intent that it reach the witness, victim, or informant. *See* Utah Code Ann. § 76-8-508.3(2). The Utah Legislature could easily have included such language had it intended that meaning. *See, e.g., id.* § 76-8-508.5(2) (requiring that a threat be communicated "to" a juror before a person may be convicted of tampering with a juror). Thus, we conclude that a statement need not be communicated *to* a witness, victim, or informant before section 508.3 is violated. Instead, the threat must simply be directed *against* such a person.

¶15 Here, Trujillo made his threatening statements immediately after the officers urged him to leave the neighbors alone. Trujillo was warned not to take action against the neighbors, and he responded by repeating his threat. Because the plain language of the statute does not require a threat to be communicated directly to a witness, victim, or informant, we conclude that the jury had sufficient evidence to determine that the threat was directed against the neighbors.

III. The Trial Court Did Not Erroneously Admit Evidence of
Gang Affiliation.

¶16 Finally, Trujillo claims that the trial court "exceeded its discretion" by admitting "highly prejudicial character evidence." For such evidence to be admitted, (1) it "must be offered for a genuine, noncharacter purpose," (2) it "must be relevant to that noncharacter purpose," and (3) "the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice." *State v. Reece*, 2015 UT 45, ¶ 57, 349 P.3d 712 (citation and internal quotation marks omitted). Because Trujillo does not contend that the evidence was unrelated to a noncharacter purpose, we limit our discussion to the first and third prongs.

A.    The Evidence Was Offered For a Noncharacter Purpose.

¶17 Trujillo argues that the evidence of his gang affiliation consisted of "impermissible character and propensity" evidence. Rule 404(b) of the Utah Rules of Evidence, often referred to as the "bad acts" rule, instructs that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character."[2] Utah R. Evid. 404(b)(1). But this

---

2. This is not to say that we are convinced that the State presented evidence of Trujillo's bad *acts*. Tracing the roots of gangs in the prison system, testifying about gang culture, and revealing how individuals gain respect and prominence in a gang are all unrelated to any specific act of Trujillo. Indeed, the only gang-related evidence that pertained to Trujillo was testimony of his ongoing leadership role in a gang and his gang tattoo, neither of which is necessarily protected evidence under rule 404(b). *See State v. Gonzalez*, 2015 UT 10, ¶¶ 39–40, 345 P.3d 1168 (stating that "mere evidence of gang affiliation that does not relate to prior bad acts [of a defendant] does not violate rule
(continued…)

type of evidence may be admitted for certain noncharacter purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). This list is not exhaustive, as prior bad act evidence is inadmissible only "where the *sole* reason it is being offered is to prove bad character or to show that a person acted in conformity with that character." *State v. Pullman*, 2013 UT App 168, ¶ 31, 306 P.3d 827 (emphasis in original) (citation and internal quotation marks omitted). Utah courts have previously admitted gang-affiliation evidence for noncharacter purposes, including evidence "showing a key witness's fear of gang retaliation, gang evidence explaining the circumstances surrounding a crime and the victim's and the defendant's intent, and evidence demonstrating motive based on a long-standing grudge between rival gangs." *State v. Gonzalez*, 2015 UT 10, ¶ 40, 345 P.3d 1168.

¶18   Here, the evidence was presented for a proper noncharacter purpose. First, the evidence was admitted to show that Trujillo knowingly, intentionally, or recklessly made a threat as opposed to some more innocuous comment. Additionally, and more importantly, the expert witness's testimony about gangs was offered to demonstrate that Trujillo's statements constituted a threat—a required element of the charged offense. Indeed, some of Trujillo's statements could seem innocuous absent this all-important context. For instance, consider the statement, "if I'm being charged with [aggravated assault]," then "my boys will be paying [the neighbors] a visit[.]" If Trujillo were a scoutmaster meaning only to send the "boys" of his scout

---

(…continued)
404's prohibition against character evidence"). Insofar as the State's evidence consists of prior bad acts, however, we hold that the trial court admitted the evidence for a permissible, noncharacter purpose. *See infra* ¶ 18.

troop over for a visit to the neighbors, perhaps bearing a cake as a token of apology from Trujillo, one would not take his remark as menacing. But a visit from a gang leader's "boys" has a much more perilous connotation. This is especially true given the expert witness's testimony that retaliatory violence is common with gangs. Thus, we conclude that the trial court did not abuse its discretion in admitting gang-affiliation evidence for the purpose of demonstrating that Trujillo's statements constituted threats.

B.     The Evidence Was Not Unfairly Prejudicial.

¶19    Finally, Trujillo asserts that the probative value of the expert testimony was substantially outweighed by its danger of unfair prejudice. Relevant evidence is generally admissible unless "its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . or needlessly present[s] cumulative evidence." Utah R. Evid. 402, 403. Although the introduction of gang-affiliation evidence implicates the potential prejudice of "guilt by association," *see State v. High*, 2012 UT App 180, ¶ 27, 282 P.3d 1046 (citation and internal quotation marks omitted), "it is not necessarily *unfairly* prejudicial and therefore should be admitted where it has high probative value," *Gonzalez*, 2015 UT 10, ¶ 37 (emphasis in original). Evidence of gang membership and its related activities has been regularly admitted by Utah courts in appropriate cases. *See High*, 2012 UT App 180, ¶ 23. *See also State v. Gallegos*, 396 P.2d 414, 416 (Utah 1964) (holding that there was no prejudicial error where a trial court admitted evidence of a violent conflict between rival gangs); *State v. Cristobal*, 2012 UT App 181, ¶ 4, 282 P.3d 1064 (concluding that a trial court did not abuse its discretion in admitting evidence that gang members "congregate in [their territory] and exhibit hostility toward intruding nonmembers"); *State v. Toki*, 2011 UT App 293, ¶ 12, 263 P.3d 481 (refusing to reverse where an expert witness testified that gangs, by definition, are "engaged in criminal activity," that the defendant was a part of a gang, that the defendant had the clothing, tattoos,

and moniker consistent with membership in his gang, and that gangs are a "problem").

¶20    *State v. Milligan*, 2010 UT App 152U, is particularly instructive in this case. There, the State presented evidence that the defendant belonged to a gang, that the defendant had several tattoos consistent with membership in that gang, and that gangs have a general dislike for "snitches" and respond violently to them. *Id.* paras. 3–4. In that decision, we noted that we did not "see much danger of unfair prejudice," and concluded that there was "certainly not enough danger of unfair prejudice that it would substantially outweigh the probative value of [the] evidence." *Id.* para. 4.

¶21    Here, an expert witness traced the history of gangs in the prison system, explained how members gain respect and prominence, and testified regarding gang culture generally. And much like in *Milligan*, the expert witness testified that Trujillo belonged to a gang, that Trujillo had a tattoo consistent with his gang membership, and that gangs have a general dislike for snitches. There is no question that this gang-affiliation evidence was prejudicial. But prejudice alone is insufficient to warrant reversal. *See* Utah R. Evid. 403.

¶22    We simply do not see "enough danger of unfair prejudice that it would substantially outweigh the probative value of this evidence." *See Milligan*, 2010 UT App 152U, para. 4. The probative value of the expert testimony was high. In fact, it was essential to elucidating the meaning, in context, of Trujillo's statements. Additionally, the risk of unfair prejudice did not substantially outweigh the probative value of the testimony. First, the majority of the expert testimony spoke to gangs generally rather than the specific actions undertaken by Trujillo or his gang. Second, the trial court gave the jury a limiting instruction, prohibiting the jury from convicting Trujillo based on "[e]vidence of other crimes, wrongs, or acts," or "because he [was] an alleged gang member." Third, during closing

argument, the prosecutor likewise limited the use to which he put the gang-affiliation evidence by informing the jury that it should not convict Trujillo simply because he was a gang member. Accordingly, he "did not take unfair advantage of the gang-related testimony." *See Toki*, 2011 UT App 293, ¶ 47. Thus, this is not a case in which the evidence was only "marginally relevant and highly prejudicial," *see High*, 2012 UT App 180, ¶ 27, and we conclude that the trial court did not abuse its discretion by admitting the gang-affiliation evidence.

## CONCLUSION

¶23    Trujillo has not established that there was insufficient evidence that he made a threat. Nor has he demonstrated that a threat must be communicated "to" a witness, victim, or informant before a threat will be deemed "directed against" a witness, victim, or informant, in violation of section 76-8-508.3. Finally, Trujillo has not shown that the trial court abused its discretion in admitting gang-affiliation evidence.

¶24    Affirmed.

―――――――