*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 5**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

TIMOTHY JAMES TRUJILLO,
*Petitioner.*

No. 20170615
Filed January 29, 2019

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Vernice Trease
No. 131907893

Attorneys:

Sean D. Reyes, Att'y Gen., Jeanne B. Inouye, Asst. Solic. Gen.,
Salt Lake City, for respondent

Nathalie S. Skibine, Christopher Jones, Salt Lake City, for petitioner

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 Timothy James Trujillo challenges his conviction under
Utah's witness retaliation statute.[1] This statute makes it a crime to
*direct* a threat of harm or a harmful action *against* a witness or a

---

[1] UTAH CODE § 76-8-508.3.

person closely associated with that witness *as retaliation against* that witness. It is undisputed in this case, however, that the witnesses—who were the subject of the alleged threat—were not present when Mr. Trujillo made the threat. And the State has not argued that Mr. Trujillo intended to have someone relay the threat to the witnesses, nor that it was likely to be relayed to them under the circumstances. So we must decide whether the statute criminalizes threats a person makes regarding a witness outside the witness's presence and without an intention to have the threat communicated to the witness. We conclude that it does not.

¶2 Additionally, Mr. Trujillo argues that the district court abused its discretion by admitting evidence of Mr. Trujillo's affiliation with the Familia Para Siempre gang. Because our holding regarding the witness retaliation statute moots this issue, we need not address it.

**Background**

¶3 Neither party disputes the facts underlying the legal issues in this case. While on patrol one evening, a police officer encountered an intoxicated minor who appeared to have been assaulted. Although there were several people nearby, the officer determined that none of them was the culprit. He cited the minor for underage drinking and left. Later that night, the officer returned to the scene after receiving a report of a man wielding a knife.

¶4 Upon his return, the officer saw two groups of people arguing. One of these groups included the minor encountered previously, the minor's brother, Mr. Trujillo, and another man. The other group consisted of three or four men who lived nearby (neighbors). The officer detained the minor and his brother and told Mr. Trujillo and the other man to leave. At this point, additional police officers arrived on the scene to act as backup, which allowed the first officer to search the scene for evidence. He found three butcher knives. Believing that these knives could possibly belong to Mr. Trujillo, the officer sent the backup officers to search for him.

¶5 The backup officers located Mr. Trujillo and the other man, but were unable to speak with them before they ran inside a nearby house. The officers followed, knocked on the door, and announced that they were police officers, but they received no response. Fearing the men might retrieve weapons, the officers kicked down the door. The officers arrested Mr. Trujillo and the other man and then confirmed their identities with the first officer. The first officer then informed Mr. Trujillo and the other man that they were being charged with aggravated assault.

¶6    At this point, Mr. Trujillo began to argue with the officers and proclaim his innocence. After Mr. Trujillo mentioned the neighbors, the officers told him that the neighbors had not been involved in the minor's assault, that they were trying to help the minor, and that Mr. Trujillo should "stay away from them." Mr. Trujillo responded by saying that "if I'm being charged with [aggravated assault]," then "my boys will be paying them a visit, [and] and it's [the officers'] fault." Mr. Trujillo repeated this several times before continuing, "Do you expect me to go to . . . jail and nothing happen?"

¶7    The State charged Mr. Trujillo with one count of retaliation against a witness, victim, or informant under the witness retaliation statute.[2] Following his bindover on the charge, Mr. Trujillo filed a motion to quash, arguing that the State did not present sufficient evidence that he made a threat of harm. The trial court denied the motion. Later, the State filed a motion *in limine*, seeking to introduce evidence of Mr. Trujillo's gang affiliation because of its importance in demonstrating that his comments constituted a threat of harm. The trial court granted the motion. At trial, the State called one of the backup officers as an expert witness, and he testified as to the history of gangs in prison, gang culture generally, and Mr. Trujillo's role as a leader in the gang with which he was affiliated. The jury convicted Mr. Trujillo, and the trial court sentenced him to an indeterminate prison term not to exceed five years. He appealed to the court of appeals.

¶8    Mr. Trujillo made three arguments before the court of appeals. First, he argued that there was insufficient evidence to support a conclusion that his statements constituted a threat.[3] Second, he argued that under the plain language of the witness retaliation statute, a threat cannot be directed against a witness unless the threat is communicated to the witness.[4] Third, he argued that the district court abused its discretion by allowing evidence of Mr. Trujillo's gang affiliation.[5] The court of appeals denied all three

---

[2] Although Mr. Trujillo was also charged with aggravated assault in a separate case, the charge was later dismissed.

[3] *State v. Trujillo*, 2017 UT App 116, ¶ 7, 400 P.3d 1213.

[4] *Id.* ¶ 8.

[5] *Id.* ¶ 9.

claims.[6] Mr. Trujillo petitioned for a writ of certiorari, which we granted. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

## Standard of Review

¶9    Mr. Trujillo raises two issues before us. First, he asks us to determine whether the court of appeals erred in concluding that the witness retaliation statute criminalizes a threat that was not communicated, or intended to be communicated, to the intended target of that threat. Second, he asks us to consider whether the court of appeals erred in affirming the district court's determination that rule 403 of the Utah Rules of Evidence did not preclude evidence of Mr. Trujillo's gang affiliation. "On certiorari, we review the decision of the court of appeals for correctness."[7] In doing so, we give no "deference to its conclusions of law."[8]

## Analysis

¶10 Mr. Trujillo argues that the court of appeals incorrectly interpreted the requirements of the witness retaliation statute. That court interpreted the statute as requiring only that a threat be made regarding the witness.[9] Mr. Trujillo, in contrast, interprets the plain language of the statute as requiring threats to reach, or at least be intended to reach, the targeted witness. We agree with Mr. Trujillo and conclude that the witness retaliation statute only criminalizes threats that the threat-maker intended to convey to the threat-target.

¶11 Additionally, Mr. Trujillo argues that the district court abused its discretion by admitting evidence of his affiliation with the Familia Para Siempre gang. Because our holding regarding the witness retaliation statute moots this issue, we need not address it.

¶12 Mr. Trujillo argues that the plain meaning of the witness retaliation statute requires, at a minimum, that the person who makes a threat against a witness intend to communicate the threat to that witness. The State argues that the statute criminalizes the making of threats *regarding* a witness. We agree with Mr. Trujillo.

---

[6] *Id.* ¶ 23.

[7] *State v. Hansen*, 2002 UT 125, ¶ 25, 63 P.3d 650 (citation omitted).

[8] *State v. Lambdin*, 2017 UT 46, ¶ 11, 424 P.3d 117 (citation omitted).

[9] *State v. Trujillo*, 2017 UT App 116, ¶ 14, 400 P.3d 1213.

¶13 When interpreting a statute, "we seek to give effect to the intent of the Legislature."[10] "To ascertain that intent, we look first to the text of the statute within its context."[11] In doing so, we acknowledge that "while the ordinary meaning of a word is powerful evidence in understanding statutory text," our aim is to determine a word's meaning in the context of the statute as a whole.[12]

¶14 The witness retaliation statute makes it a crime to make a threat or cause harm and to direct that threat or harmful action against a witness as retaliation or retribution:

> A person is guilty of the third degree felony of retaliation against a witness, victim, or informant if, believing that an official proceeding or investigation is pending, is about to be instituted, or has been concluded, he: (a)(i) makes a threat of harm; or (ii) causes harm; and (b) directs the threat or action: (i) against a witness or an informant regarding any official proceeding, a victim of any crime, or any person closely associated with a witness, victim, or informant; and (ii) as retaliation or retribution against the witness, victim, or informant.[13]

In other words, under the statute it is a crime (1) to make a threat of harm or cause harm and (2) direct the threat or harmful action against a witness "as retaliation or retribution," if (3) the person making the threat or causing the harm does so while "believing that an official proceeding or investigation is pending, is about to be instituted, or has been concluded."[14]

---

[10] *State v. Rasabout*, 2015 UT 72, ¶ 10, 356 P.3d 1258.

[11] *Id.*

[12] *Id.*; *see also Biedermann v. Wasatch Cty.*, 2015 UT App 274, ¶ 17, 362 P.3d 287 (explaining that when a "term has more than one ordinary meaning, we interpret it 'based upon the context in which it is used'" (citation omitted)).

[13] UTAH CODE § 76-8-508.3(2).

[14] *Id.*

¶15 The State argues that a person violates the statute if the person makes a threat of harm *regarding* a witness, even if the witness is not present, and the threat-maker did not intend the witness to hear it. The State does not support this argument with its own textual analysis of the statutory language. Instead, it refers us to the court of appeals' decision, which focused on the meaning of the word "against."[15] According to the court of appeals, "against" is used in the statute to mean "in opposition or hostility to."[16] With this definition in mind, the court of appeals concluded that the statute "is devoid of any language suggesting that the threat must be made with the intent that it reach the witness."[17]

¶16 Mr. Trujillo, on the other hand, argues that the text of the statute requires that the threatening words reach, or at least be intended to reach, their target. In support, he points to the plain meaning of the phrase "as retaliation or retribution" to suggest that the statute criminalizes only threats that a person communicates—or, alternatively, intends to communicate—to a witness cooperating with the justice system.[18] Because the meaning of the phrase "as retaliation or retribution" supports only Mr. Trujillo's interpretation, we conclude that the witness retaliation statute only criminalizes threats that the threat-maker intended to convey to the threat-target.

¶17 For a threat against a witness to constitute a criminal violation under the witness retaliation statute, it must be directed "as retaliation or retribution against the witness." Mr. Trujillo argues that this phrase indicates that a person does not violate the retaliation statute unless the threat reaches the witness. And, alternatively, he argues that even if the witness retaliation statute does not require that the threat reach the witness, it does require that the person making the threat *intend* the threat to reach the witness. Although we do not accept Mr. Trujillo's first argument, because it

---

[15] *Trujillo*, 2017 UT App 116, ¶ 14.

[16] *Id*. (citation omitted) (internal quotation marks omitted).

[17] *Id*.

[18] Mr. Trujillo also argues that the plain meaning of the phrases "threat" and "directs against" supports his proposed interpretation of the statute. Because we do not find these arguments helpful to our analysis, we do not address them.

would render one component of the witness retaliation statute superfluous, we agree with his second argument.

¶18 Mr. Trujillo argues that the phrase "as retaliation or retribution against the witness" requires that the witness actually hear the threat. According to Mr. Trujillo, this is so because the definitions of the words "retaliation" and "retribution" both require that some type of "harm in return," "punishment," or "repayment" occur. Because there is no "harm in return," "punishment," or "repayment" when the witness is unaware of the threat, Mr. Trujillo argues, the statute necessarily requires that the witness hear the threat and therefore be harmed by it. But this argument fails because nothing in the language of the statute requires that the threat-maker successfully retaliate against the witness.

¶19 As it is currently written, the subject of the operative sentence in the witness retaliation statute is the "person" who makes the threat.[19] And a violation of the statute occurs when the threat-maker (the subject) directs the threat against a witness "as retaliation or retribution."[20] Importantly, "as retaliation or retribution" operates as an adverbial phrase that modifies the verb phrase "direct against." So the statute is violated where the threat-maker (the subject) directs the threat as retaliation, not necessarily where the witness (the indirect object) is retaliated against. Because it is possible for a person to direct a threat against a witness without the witness hearing the threat—and this remains possible even where the person directs the threat as a form of retaliation—the statute does not require that the witness actually hear the threat. Accordingly, Mr. Trujillo's first argument related to the meaning of the phrase "as retaliation or retribution" fails.

¶20 But Mr. Trujillo also argues that even if the witness retaliation statute does not require that the threat reach the witness, it does require that the person making the threat *intend* the threat to reach the witness. This is a subtle, yet important distinction. And it is a distinction that is supported by the phrase "as retaliation or retribution."

---

[19] UTAH CODE § 76-8-508.3(2).

[20] *Id*. § 76-8-508.3(2)(b)(ii).

¶21 Black's Law Dictionary defines "retaliation" as "[t]he act of doing someone harm in return for actual or perceived injuries or wrongs; an instance of reprisal, requital, or revenge."[21] And it defines "retribution" as "[p]unishment imposed for a serious offense" or "[s]omething justly deserved; repayment; reward."[22] Both of these words suggest that the person retaliating intends the harm to actually affect the target of the retaliation or retribution.

¶22 This interpretation is further supported by the legislature's inclusion of the preposition "as" at the beginning of the phrase.[23] By drafting the statute so that the threat-maker must make the threat *as* retaliation, the legislature conveyed a different meaning than it would have if it had drafted the statute to criminalize a defendant's threat *of* retaliation, or threat *to* retaliate.[24] "As," when used as it is in the statute, means "in the capacity, character, condition, or role of."[25] So when a person makes a threat as retaliation, the threat operates as the form of retaliation against the intended target.

¶23 And if the threat operates as the form of retaliation, then the person retaliating must *intend* the threat to cause harm or punish the person who is the target of the threat. This is so because "retaliation" and "retribution" mean an act of either harm or punishment done in response to another person's action,[26] and a threat cannot be an act of harm or punishment against a person unless the threat actually reaches that person. It follows, therefore, that a person who makes a threat *as* retaliation must intend that the threat reach the targeted

---

[21] *Retaliation*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[22] *Retribution*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[23] *See State v. Stewart*, 2018 UT 24, ¶ 12, ---P.3d--- ("We 'presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning.'" (citation omitted)).

[24] A threat of retaliation, or a threat to retaliate, would be a threat to retaliate in the future. If the person making the threat does not intend it to reach the subject of the threat, then it cannot be said that the person made the threat as retaliation.

[25] *As*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1998).

[26] *See supra* ¶ 21.

witness.[27] Accordingly, we hold that the phrase "as retaliation or retribution" limits the scope of the "threat" prong of the witness retaliation statute to those instances where a person makes a threat and intends it to reach the targeted witness.[28]

¶24 In contrast, the State argues that this phrase "merely required the State to prove the reason [Mr. Trujillo] made the threat." In other words, the State claims that the phrase "as retaliation or retribution" includes those instances where the threat-maker makes a threat because of a desire to retaliate against the witness. Under this interpretation, the threat is not a form of retaliation; it is an expressed desire to retaliate in the future. But as we have explained above, this interpretation is contradicted by the legislature's use of the word "as," which limits the scope of the statute to those instances where the threat-maker makes the threat as a form of retaliation against the threat's target. Accordingly, the State's proposed interpretation is not supported by the plain language of the statute.

¶25 Because the phrase "as retaliation or retribution" requires, at the very least, that the threat-maker intend to communicate the threat to the threat's target, we reverse Mr. Trujillo's conviction under the witness retaliation statute.

## Conclusion

¶26 The witness retaliation statute makes it a crime to direct a threat or a harmful action against a witness as retaliation or retribution. Because the phrase "as retaliation or retribution"

---

[27] When the witness retaliation statute is interpreted in this way, Mr. Trujillo did not make a threat as retaliation against the neighbors. He either made a threat as retaliation against the police, or he made a threat to retaliate against the neighbors in the future. Neither theory was the basis for Mr. Trujillo's conviction in this case.

[28] We note that the language of the statute encompasses threats directed against "a witness" as well as threats directed against "any person closely associated with a witness." UTAH CODE § 76-8-508.3(2). So under the statute the subject of the threat could be the witness or any person closely associated with the witness, as long as the threat is made as a form of retaliation *against the witness* — or in other words, was made with the intent that it reach the witness.

necessarily limits the scope of the statute to those instances where a threat is made as an intended form of retaliation or retribution, we conclude that the statute criminalizes only those threats that the threat-maker intended to be communicated to the witness. Accordingly, we reverse Mr. Trujillo's conviction.

————————