IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 81524-5-I |
| | ) | |
| | ) | |
| | ) | |
| R.P., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — R.P. contends the trial court erred by ordering that he be involuntarily committed when substantial evidence did not establish he presented a likelihood of serious harm to himself. From the evidence presented at trial, a reasonable person could conclude R.P suffered from schizoaffective disorder, attempted to slit his throat three times in the past, and continued to exhibit suicidal ideations. Because a reasonable person could conclude R.P. presented a likelihood of serious harm to himself, substantial evidence supported the trial court's conclusion that R.P should be involuntarily committed.

R.P. also argues his involuntary commitment was erroneous because he was committed without the opportunity for a jury trial. Because there is no constitutional right to a jury trial on a 14-day involuntary commitment petition, the court did not err by committing R.P. after a bench trial.

Therefore, we affirm.

FACTS

On August 15, 2019, the Renton Police Department responded to a call that R.P. was trespassing at Walmart. The officer's report noted that R.P. "was trespassed for soliciting customers and being aggressive with employees."[1] R.P. was initially detained at the South Correctional Entity. The Renton municipal court referred R.P. to a King County crisis responder to conduct an initial psychiatric evaluation.

On November 25, the King County crisis responder filed a petition for initial commitment. The initial petition alleged that R.P. suffered from a mental disorder "characterized by disorganization, disorientation, agitation, poor distress tolerance, poor impulse control, poor insight, and poor judgment."[2] The petition stated that R.P. suffered from "schizophrenia and methamphetamine use disorder."[3]

After R.P. was detained for 72 hours of psychiatric treatment, Dr. Sonja Kottke, a licensed psychologist for Fairfax Hospital, filed a petition for 14-day involuntary treatment. The involuntary commitment petition alleged that R.P. was gravely disabled. Dr. Kottke noted that R.P. exhibited "symptoms of active psychosis such as irritability, agitation, yelling, pressured speech, restlessness, disorganization, and impaired insight and judgment."[4]

---

[1] Clerk's Papers (CP) at 10.

[2] CP at 1.

[3] CP at 1.

[4] CP at 25.

At the probable cause hearing, the State moved to amend the involuntary commitment petition to include that R.P. presented a likelihood of serious harm to himself. At the hearing, Dr. Kottke testified for the State. She stated that R.P. was suffering from schizoaffective disorder evidenced by disorganization, confusion, labile mood, and auditory hallucinations. The trial court found that a preponderance of the evidence supported the State's allegation that R.P. presented a likelihood of serious harm to himself. In rendering its decision, the trial court noted that R.P.

> has not said . . . I am threatening you that I'm going to kill myself, but he said, I am thinking about killing myself, I have a plan on how to do it, and I've done it before. When I take those statements in context, I believe that . . . in and of itself, is evidence of a threat to hurt himself now.[5]

On December 12, 2019, the court entered an order committing R.P. to 14-day involuntary treatment and entered findings of fact and conclusions of law.

R.P. appeals.

<u>ANALYSIS</u>

I. Sufficiency of the Evidence

R.P. challenges three findings of fact related to the trial court's conclusion of law that he presented a likelihood of serious harm to himself. He challenges the courts findings that he exhibited a "near daily endorsement of suicidal ideation with frequent reference to a plan to cut his throat," that he recently presented a plan to

---

[5] Report of Proceedings ( RP) (Dec. 12, 2019) at 47.

commit suicide and admitted to prior attempts, and that he threatened to commit suicide if he were discharged.[6]

"'[W]here the trial court has weighed the evidence, appellate review is limited to determining whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law and judgment.'"[7] "'Evidence is substantial if it is sufficient to convince a reasonable person of the truth of the finding.'"[8] The trier of fact is solely responsible for making credibility determinations.[9] We review conclusions of law de novo.[10]

Under RCW 71.05.020(34)(a)(i), a person can be involuntarily committed if, as a result of a mental disorder, he presents a likelihood of serious harm to himself. The statute requires "[a] substantial risk that: (i) physical harm will be inflicted by a person upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself."[11]

> RCW 71.05.020 does not explicitly require that evidence of behavior be recent, although such evidence must be recent to be meaningful. We thus interpret RCW 71.05.020 as requiring a showing of a substantial risk of physical harm as evidenced by a recent overt act.

---

[6] Appellant's Br. at 7-12.

[7] In re Det. of H.N., 188 Wn. App. 744, 762, 355 P.3d 294 (2015) (alteration in original) (quoting In re Det. of LaBelle, 107 Wn.2d 196, 209, 728 P. 2d 138 (1986)).

[8] State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018) (quoting State v. Klein, 156 Wn.2d 102, 115, 124 P.3d 644 (2005)).

[9] Morse v. Antonellis, 149 Wn.2d 572, 574, 70 P.3d 125 (2003).

[10] In re Estate of Haviland, 162 Wn. App. 548, 561, 255 P.3d 854 (2011).

[11] RCW 71.05.020(34)(a)(i).

This act may be one which has caused harm or creates a reasonable apprehension of dangerousness.[12]

"But the statute only requires the State show a 'substantial risk' that physical harm will be inflicted."[13] And "recent past mental history is relevant in determining present and immediate future mental behavior."[14]

Dr. Kottke noted that based upon her review of R.P.'s records, he exhibited suicidal ideations on November 28 and 29, and December 4, 5, 6, and 11 of 2019. Specifically, Dr. Kottke read a psychosocial assessment from November 28 into the record, describing R.P.'s recent suicidal ideations. In the assessment, R.P. stated that he thought about killing himself six months earlier and said "yes" when asked whether in the past month he wished he was dead. Dr. Kottke read notes from a suicide rating screen into the record. The early December screening indicated that R.P. had thoughts of killing himself and had been actively thinking about how to kill himself. Dr. Kottke also testified that a December mental status exam noted that R.P. had a "plan to slash his throat."[15]

Additionally, Dr. Kottke testified that one of the reports stated that R.P. threatened to kill himself and someone else. She stated that R.P. "told the case manager . . . he has tried to slit his throat three times previously and would maybe

---

[12] In re Det. of Harris, 98 Wn.2d 276, 284-85, 654 P.2d 109 (1982).

[13] H.N., 188 Wn. App. at 765.

[14] In re Meistrell, 47 Wn. App. 100, 108, 733 P.2d 1004 (1987).

[15] RP (Dec. 12, 2019) at 24.

reattempt."[16] She testified that while at Fairfax, R.P. "has been consistently endorsing suicidal ideation, particularly to his psychiatrist. . . . He has talked about multiple plans. He's also talked about slitting his throat. And as recently as yesterday, he was also endorsing suicidal ideation."[17]

Dr. Kottke further testified that R.P. discussed hurting himself and a woman if he were released. Dr. Kottke read into the record notes from a mental status exam which stated that R.P. had "thoughts to slash [his] throat if he was outside."[18] Dr. Kottke stated that R.P. reported "I feel safe here. Yeah, I could slash my throat but not here."[19] Dr. Kottke testified that the times R.P. was "talking about cutting his throat [she was] concerned that he would find a way to try and harm himself, if not potentially kill himself, if he were to leave in this state."[20] The court found Dr. Kottke's testimony credible.

Based upon Dr. Kottke's testimony, a reasonable person could conclude that R.P. often endorsed suicidal ideations with a frequent reference to a plan to cut his throat, that R.P. had a plan to commit suicide and admitted that he attempted suicide in the past, and that R.P. made threats that indicated he would likely commit suicide if he were discharged. Therefore, substantial evidence

---

[16] RP (Dec. 11, 2019) at 15.

[17] RP (Dec. 12, 2019) at 29.

[18] RP (Dec. 11, 2019) at 16.

[19] RP (Dec. 12, 2019) at 25.

[20] RP (Dec. 12, 2019) at 30.

supports the court's findings of fact. And those findings, in turn, support the trial court's conclusion that R.P. presented a likelihood of serious harm to himself.

R.P. contends that his statements referencing his past suicide attempts were insufficient to establish a "recent overt act" because they were made more than three years prior to the probable cause hearing in violation of RCW 71.05.245(3).[21] But section .245 subsection (3) applies only when the court is making a determination of "whether there is a likelihood of serious harm in a hearing conducted under RCW 71.05.240 or 71.05.320."[22] "For purposes of [.245(3)] "recent" refers to the period of time not exceeding three years prior to the current hearing."[23] R.P. provides no authority suggesting that the definition of "recent" provided by section .245 subsection (3) also applies to other sections of RCW 71.05. R.P.'s admission that he attempted to slit his throat three times in the past, coupled with his consistent suicidal ideations while he was detained at Fairfax, sufficiently establishes "recency" for purposes of the "overt act" requirement under RCW 71.05.020(34)(a)(i).

II.  Right to Jury Trial

R.P. argues that he was deprived of his constitutional right to have a jury determine if he had a mental illness justifying a 14-day involuntary commitment.

---

[21] Appellant's Br. at 11.

[22] RCW 71.05.245.

[23] RCW 71.05.245.

In In re the Detention of S.E., we rejected this argument.[24]  In S.E., this court analyzed the history of the right to a jury trial and held that there is no right to a jury trial in a hearing on a 14-day involuntary commitment petition.[25]  The holding in S.E. of no right to a jury trial was confirmed in T.C.[26]

R.P. contends that this court in S.E. reached the wrong conclusion.  He relies on In re the Matter of Ellern in support of his proposition.  But, as this court explained in T.C., Ellern "differs significantly" from S.E. because it "involved an individual who was detained for nearly five months and facing indefinite involuntary commitment."[27]  For the reasons explained in S.E. and T.C., R.P. was not entitled to a jury trial.

Therefore, we affirm.

_____

WE CONCUR:

_____          _____

---

[24] 199 Wn. App. 609, 400 P.3d 1217 (2017).

[25] Id. at 618.

[26] Matter of Det. of T.C., 11 Wn. App. 2d 51, 59-60, 450 P.3d 1230 (2019).

[27] Id. at 60.