*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 27**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MICHAEL W. THOMPSON,
*Appellee,*

*v.*

STATE OF UTAH,
*Appellant.*

No. 20220949
Heard March 4, 2024
Filed August 1, 2024

On Direct Appeal

Third District, Salt Lake County
The Honorable Su Chon
No. 170901627

Attorneys:

Robert S. Clark, David C. Reymann,
Austin J. Riter, Rachel L. Wertheimer, Jensie L. Anderson,
Jennifer Springer, Salt Lake City, for appellee

Sean D. Reyes, Att'y Gen., Erin Riley, Asst. Att'y Gen.,
John J. Nielsen, Special Asst. Solic. Gen., Andrew F. Peterson,
Deputy Solic. Gen., Salt Lake City, for appellant

JUSTICE POHLMAN authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN,
JUSTICE HAGEN, and JUDGE HALL joined.

Having recused himself, CHIEF JUSTICE DURRANT does not
participate herein; JUDGE CRAIG HALL sat.

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1    In 2008, a jury convicted Michael W. Thompson of two counts of forcible sodomy. Thompson appealed his conviction, contending his counsel was constitutionally ineffective, and the court of appeals agreed. It reversed Thompson's conviction and remanded for a new trial. After the State elected not to retry Thompson, the district court dismissed the case against him with prejudice. Thompson was released after serving several years in prison.

¶2    A few years after his release, Thompson petitioned the court for a factual innocence determination under the factual innocence part of the Post-Conviction Remedies Act (PCRA).[1] He asserted that newly discovered material evidence, when viewed with the trial evidence, proved his innocence. After a hearing, the post-conviction court concluded that Thompson had clearly and convincingly established his factual innocence. The State appeals that determination.

¶3    The State contends that the post-conviction court misinterpreted the factual innocence statute to allow the court to base its innocence determination on more than the newly discovered evidence. The State asserts that the statute requires an innocence determination to be based upon the newly discovered evidence and that the new evidence Thompson introduced, even if credible, did not demonstrate his innocence.

¶4    We agree with the State. Under the plain language of the factual innocence statute, a determination of factual innocence must be based on newly discovered evidence, not evidence that was available at trial. And here, Thompson's newly discovered evidence does not clearly and convincingly establish his factual innocence. Accordingly, we reverse.

## BACKGROUND

¶5    In August 2002, Michael Thompson, a thirty-two-year-old interstate truck driver living in Wisconsin, drove with a friend (Friend) to Utah for work. During this trip, Thompson and Friend

---

[1] This part of the Post-Conviction Remedies Act, sections 78B-9-401 to -405, is titled "Postconviction Determination of Factual Innocence." UTAH CODE § 78B-9-401. For simplicity, we refer to it throughout this opinion as the factual innocence statute.

spent two nights in Salt Lake City with Thompson's family. Later, Thompson's half-sister, A.T., reported to police that Thompson had sexually abused her. The State charged Thompson with two counts of forcible sodomy "[i]n or about August, 2002, in Salt Lake County."

*Trial*

¶6    At trial, A.T. testified that she was sixteen years old when Thompson and Friend visited her and her mother in Salt Lake City. According to A.T., Thompson and Friend stayed at her mother's house for two consecutive nights; Thompson slept on the couch, and Friend slept in a spare bedroom. A.T. explained that on the second morning, Thompson came into her bedroom, and they performed oral sex on one another. She said that after Thompson ejaculated, he "wiped it up in a tissue and flushed it down the toilet and went back upstairs." A.T. further explained that she joined Thompson upstairs a few minutes later, and they talked about "what had happened between [them]" but "switched the conversation" to a radio show when they heard someone stirring from a bedroom.

¶7    Although she could not remember the exact date, A.T. testified that the abuse occurred "right at the end of August," around 9:00 or 9:30 in the morning.[2] She admitted that this testimony was inconsistent with her testimony at the preliminary hearing, where she had estimated that the abuse occurred around 10:00 or 11:00 in the morning. She explained that she "didn't have a clock" in her room and "wasn't sure what time it would have been" "because of how high the sun was."

¶8    A.T. also admitted that she had previously reported to the police that "nothing happened" between her and Thompson. She explained that she did not initially disclose the abuse to the police because "[i]t's hard to pull up and have flashbacks and remember what happened."

¶9    The defense called several witnesses to testify, including Thompson and Friend.

¶10  Thompson denied abusing A.T. He testified that he and Friend did not stay in Salt Lake City for two consecutive days, as

---

[2] Some witnesses and evidence referred to Central Daylight Time, while others referred to Mountain Daylight Time. For consistency, we refer to Mountain Daylight Time.

A.T. claimed. According to Thompson, he and Friend traveled to Salt Lake City from Wisconsin and arrived in town in the late evening; the following morning, A.T. and Friend woke him up, and Thompson and Friend left in the afternoon to make a delivery in Nevada. Thompson testified that he and Friend returned to Salt Lake City a few days later and spent a second night at Thompson's stepmother's house. He testified that he and Friend woke up at 5:00 a.m., "got ready," and "got out of there" because they had to make a "time-sensitive" produce delivery. According to Thompson, they were "rolling" by 5:30 a.m. Thus, Thompson testified that the sexual abuse could not have occurred around 9:00 a.m. on the second morning, as A.T. alleged.

¶11 Thompson introduced trucking logs to corroborate his account. The logs showed that, on August 20, Thompson and Friend drove approximately ten-and-a-half hours from Rapid City, South Dakota, to Salt Lake City and arrived around 9:30 p.m. They showed that Thompson and Friend left Salt Lake City the next day around 2:30 p.m. And they showed that Thompson and Friend returned to Salt Lake City on August 24 and left for Rapid City at 5:30 a.m. on August 25. According to the logs, Thompson and Friend made the trip from Salt Lake City to Rapid City in just under ten hours.

¶12 Thompson testified that he filled out the trucking logs himself and that he had no "independent verification" of their "dates and times." He testified that federal law required him to hold onto the logs for seven years and that he accurately recorded his trips to avoid possible fines. He also admitted that he had access to stacks of blank trucking logs and that he did not produce the logs before trial in response to the State's pre-trial discovery request.

¶13 Friend's testimony largely corroborated Thompson's account of the trip. Like Thompson, Friend testified that they did not spend two consecutive nights in Salt Lake City. He testified that they spent one night in Salt Lake City on the way out West and one night there on the way back to Wisconsin. According to Friend, it was not possible for Thompson to have sexually assaulted A.T. on either morning that they were in town because Friend did not leave Thompson's side for more than five minutes. Friend testified that he slept on the floor by the couch, less than a foot away from Thompson, and that he woke up before Thompson on both mornings.

¶14 After the defense rested its case, the State called a rebuttal witness, Randy West. A transportation specialist, West relied on a printout from computer software that calculated the average time it would take to drive from Rapid City to Salt Lake City. He reported that the trip would take more than fourteen hours, not ten. West testified that Thompson "cooked the books." Thompson's counsel did not challenge West's qualifications or call a rebuttal expert.

¶15 During closing argument, the State acknowledged the "minor inconsistencies" in A.T.'s testimony, but it explained that those inconsistencies "don't necessarily equate to reasonable doubt. They're just a mark of human fallibility." The State stressed to the jury that the crimes in question occurred "many years ago" when A.T. was "a lot younger," that it would be "difficult" for anyone to recall the details of events that occurred so many years ago, and that the timing of the sexual abuse "is really not that significant." The State also pointed out that A.T.'s "account of the most significant facts was st[r]ong and believable," and that Thompson had "a lot at stake" and "everything to gain by lying."

¶16 The jury convicted Thompson on both counts of forcible sodomy.

*Direct Appeal and 23B Remand*

¶17 Thompson appealed his conviction, alleging his counsel was constitutionally ineffective for, among other things, failing to properly challenge West's testimony. Invoking rule 23B of the Utah Rules of Appellate Procedure, Thompson moved for a remand to develop the factual record, which the court of appeals granted.[3]

¶18 At the evidentiary hearing, the defense presented expert testimony from Mark Hornung, the senior vice president of the company that created the software West relied on at trial. Based on Hornung's testimony, the district court found that, when properly programmed, the software conveyed that Thompson could drive the route from Rapid City to Salt Lake City "in 10 hours" even if he "had to slow down at times while driving."

---

[3] "The purpose of a rule 23B remand is to develop new evidence in the record, without which a defendant cannot bring his ineffective assistance of counsel claim on appeal." *State v. Griffin*, 2015 UT 18, ¶ 18, 441 P.3d 1166.

¶19 Ultimately, the district court found that West "lacked the requisite knowledge, skill, experience, training and education to qualify as an expert for the [computer] program." The court found West "did not generate the printout he used at trial" and "was not physically present when the printout was generated." Additionally, the court found that West used the 1997 version of the computer software, which was less reliable than the 2002 version.

¶20 The court of appeals held that Thompson's counsel performed deficiently by failing to investigate, challenge, or object to West's testimony. *State v. Thompson*, 2014 UT App 14, ¶ 91, 318 P.3d 1221. Based on the cumulative harm of this and other errors, the court of appeals reversed Thompson's conviction and remanded the case for a new trial. *Id.* The State elected not to retry Thompson, and the district court dismissed the case with prejudice.

*Petition for Factual Innocence*

¶21 In 2017, Thompson filed a petition under the PCRA, *see* UTAH CODE § 78B-9-402, for a determination of factual innocence that would "give him back his name."[4] He averred Hornung's 23B testimony was newly discovered evidence that, "when viewed with all the other evidence in this matter," established that Thompson did not sexually abuse A.T. The post-conviction court found that Thompson was entitled to a hearing. *See id.* § 78B-9-402(9)(c)(i).

¶22 In addition to reviewing Hornung's 23B testimony, the court heard live testimony from A.T., Thompson, Friend, and others. The court also reviewed the trial transcript. "Based on the evidence presented at trial, on appeal, and in [the] Petition for Factual Innocence," the court concluded that Thompson "demonstrated by clear and convincing evidence that he is factually innocent of the crimes" charged.

---

[4] The factual innocence statute entitles Thompson to seek a factual innocence determination even though the charges against him were dismissed with prejudice. *See* UTAH CODE § 78B-9-402(5) ("A person who has already obtained postconviction relief that vacated or reversed the person's conviction or sentence may also file a petition under this part in the same manner and form as described above, if no retrial or appeal regarding this offense is pending.").

¶23 In reaching its conclusion, the court observed that Hornung's 23B testimony negated West's trial testimony that the route reported on Thompson's trucking logs could not be driven in under ten hours. The court also rejected the State's argument that Hornung's testimony "alone must form the basis" of the factual innocence determination, stating that such evidence "is just one—albeit an important one—consideration" in the determination. The court found that the combination of trial and post-conviction evidence "weighs heavily in [Thompson's] favor as to his alibi and credibility," and on that basis the court concluded he was factually innocent. The State appeals.

## ISSUE AND STANDARD OF REVIEW

¶24 The State contends that the post-conviction court erred in declaring Thompson factually innocent. It argues that the court incorrectly interpreted the factual innocence statute to allow the court to base its factual innocence determination on more than the newly discovered evidence, and that the court's faulty interpretation led it to wrongly conclude that Thompson is factually innocent. We review the post-conviction court's interpretation of the factual innocence statute for correctness. *Brown v. State*, 2013 UT 42, ¶ 36, 308 P.3d 486.

## ANALYSIS

¶25 The State challenges the post-conviction court's factual innocence determination. It contends that, because subsection 78B-9-404(8) requires newly discovered evidence to be determinative of a petitioner's factual innocence, the court was wrong to base its factual innocence determination on evidence other than Hornung's 23B testimony. The State further maintains that under the correct standard, Thompson's newly discovered evidence does not establish factual innocence.

¶26 We agree with the State that subsection 78B-9-404(8) requires the court to base its factual innocence determination on the newly discovered evidence. In other words, for Thompson to satisfy the demands of the factual innocence statute, Hornung's 23B testimony must establish Thompson's innocence. We also agree with the State that Thompson has not proven factual innocence, because Hornung's 23B testimony does not clearly and convincingly show that Thompson did not sexually abuse A.T.

## I. THE FACTUAL INNOCENCE STATUTE REQUIRES THAT NEWLY DISCOVERED EVIDENCE BE THE BASIS FOR A FACTUAL INNOCENCE DETERMINATION

¶27 Under the factual innocence statute, a person convicted of a felony may petition the district court for a hearing to establish factual innocence.[5] *See generally* UTAH CODE §§ 78B-9-401 to -405. In so doing, the petitioner must aver, among other things, that "newly discovered material evidence exists that, if credible, establishes that the petitioner is factually innocent," *id.* § 78B-9-402(2)(a)(i), meaning the petitioner did not "engage in the conduct for which the [petitioner] was convicted," *id.* § 78B-9-401.5(2)(a). "If the court determines that the statute's threshold requirements are met and that 'there is a bona fide and compelling issue of factual innocence regarding the charges of which the petitioner was convicted,' the district court must hold a hearing." *Ashby v. State*, 2023 UT 19, ¶ 47, 535 P.3d 828 (quoting UTAH CODE § 78B-9-402(9)(c)(i)).

¶28 Ultimately, the petitioner bears the burden of establishing factual innocence by clear and convincing evidence. *See* UTAH CODE § 78B-9-404(1)(b). To satisfy this burden, "the petitioner must affirmatively prove innocence of both the crime for which the petitioner was convicted and any related criminal conduct." *Gressman v. State*, 2013 UT 63, ¶ 39, 323 P.3d 998; *see also* UTAH CODE § 78B-9-401.5(2). The court, in determining whether this burden has been met, "shall consider, in addition to the evidence presented at the hearing under this part, the record of the original criminal case and at any postconviction proceedings in the case." UTAH CODE § 78B-9-404(3). Critically, the court may not find that the petitioner is factually innocent unless it determines that the petitioner did not commit the offense of which the petitioner was convicted and "the

---

[5] If factual innocence is established, a petitioner is entitled to an order of expungement and a letter from the court stating that the petitioner was found to be factually innocent and did not commit the crimes for which the petitioner was convicted. *See* UTAH CODE § 78B-9-405(9). And, if the petitioner was incarcerated, the petitioner is entitled to a monetary payment from the State. *See id.* § 78B-9-405(2)(a) (requiring payment of the monetary equivalent of the average annual nonagricultural payroll wage in Utah every year the petitioner was incarcerated, up to a maximum of fifteen years).

determination is based upon the newly discovered material evidence described in the petition." *Id.* § 78B-9-404(8)(b).

¶29 The crux of the parties' dispute here concerns the meaning of the phrase "based upon" as it is used in subsection 404(8). The State contends that to satisfy the statute's requirements, the newly discovered evidence "must be the basis for the factual innocence finding." According to the State, this means that while the post-conviction court must "consider" all the evidence, it is the newly discovered evidence that "must be determinative." In other words, the new evidence "must be the thing that shows innocence in light of existing evidence. It must be a complete game-changer."

¶30 In contrast, Thompson contends that "based upon" means merely that the newly discovered evidence must "play a role" in the factual innocence determination. He argues that it suffices for the newly discovered evidence to "cast[] the old evidence in a new light." Relying heavily on the statute's requirement that the court consider all the evidence, Thompson points to our decision in *Brown v. State*, where we held that "the plain language of the [factual innocence statute] allows a court to base its determination of factual innocence on all available evidence—both old and new." 2013 UT 42, ¶ 45, 308 P.3d 486.

¶31 To resolve this disagreement, we begin with subsection 404(8)'s plain language, with the aim of "giv[ing] effect to the intent of the Legislature." *State v. Trujillo*, 2019 UT 5, ¶ 13, 439 P.3d 588 (cleaned up). "But we do not interpret the 'plain meaning' of a statutory term in isolation. Our task, instead, is to determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 12, 248 P.3d 465. And we seek to "give effect to every word of a statute, avoiding any interpretation which renders parts or words in a statute inoperative or superfluous." *Bountiful City v. Baize*, 2021 UT 9, ¶ 42, 487 P.3d 71 (cleaned up).

¶32 Subsection 404(8) provides,

> The court, after considering all the evidence, may not find the petitioner to be factually innocent unless: (a) the court determines by clear and convincing evidence that the petitioner did not commit one or more of the offenses of which the petitioner was convicted . . . ; and (b) the determination is based

upon the newly discovered material evidence described in the petition . . . .

UTAH CODE § 78B-9-404(8).

¶33 Focusing first on the plain meaning of "based upon," we conclude that the State has the better of the arguments. For an innocence determination to be "based upon" newly discovered evidence, as that phrase is ordinarily understood, the newly discovered evidence must be the "basis" or "foundation" for the determination. *See Base*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/base (last visited July 16, 2024) (defining "base," when used as a verb with *on* or *upon*, as "to find a foundation or basis for"). The plain language does not suggest it is enough for the new evidence to merely "play a role." By requiring the factual innocence determination to be "based upon" the newly discovered evidence, the legislature has expressed its intent that the newly discovered evidence be the foundation of the court's determination.

¶34 This interpretation of "based upon" is further supported by related provisions in the factual innocence statute. Indeed, under subsection 402(2)(a), to even receive a factual innocence hearing, the petitioner must aver in a factual innocence petition that "newly discovered material evidence exists that, if credible, establishes that the petitioner is factually innocent"; that "the specific evidence identified by the petitioner in the petition establishes innocence"; and that "viewed with all the other evidence, the newly discovered evidence demonstrates that the petitioner is factually innocent."[6] UTAH CODE § 78B-9-402(2)(a)(i), (ii), (v). In all three instances, the newly discovered evidence is doing the work. Even the third requirement, which anticipates that the new evidence will be viewed with all other evidence, mandates that the newly discovered evidence demonstrates factual

---

[6] Thompson did not try to satisfy this requirement in his petition. Instead, he argued that his innocence was established by the newly discovered evidence *plus* his testimony, the trucking logs, Friend's testimony, and A.T.'s inconsistencies and motive to lie. His approach conflicted with the plain language of subsection 402(2) but was consistent with observations we made in *Brown v. State* about the former version of the statute. *See* 2013 UT 42, ¶ 48, 308 P.3d 486 (interpreting the 2010 version of the factual innocence statute); *see also infra* ¶¶ 34 n.7, 37.

innocence. Had the legislature intended the statute to work in the way Thompson suggests, the statute presumably would have required the petitioner to aver that, when viewed with the newly discovered evidence, the body of evidence demonstrates that the petitioner is factually innocent.[7]

¶35 Thus, from the outset of the factual innocence process, the legislature set the expectation that it is the newly discovered evidence that will establish a petitioner's innocence. To construe subsection 404(8) as merely requiring that the new evidence "cast the old evidence in a new light," we would not only need to disregard the provision's plain language, but we would have to conclude that the legislature designed a statutory scheme that required more of the newly discovered evidence at the petition stage than at the hearing. This we cannot do.

¶36 Thompson, however, pushes back on this interpretation. He refers us to *Brown*, where we interpreted the factual innocence statute and concluded that it allows a court to base its innocence determination on "both old and new" evidence. (Quoting 2013 UT 42, ¶ 45.) Thompson acknowledges that the statute has since been amended and that subsection 404(8) is a new addition. Still, he invites us to view the amendment as a codification of *Brown* and contends that the new language does not demand a different

---

[7] We recognize that in interpreting a prior version of the factual innocence statute, we viewed section 402 differently. *See Brown*, 2013 UT 42, ¶ 42. In *Brown*, we were asked to interpret section 404 and "consider[ed] section 402 only to place section 404 in proper context." *Id.* ¶ 40 n.22. Although we twice noted that section 402 requires a petitioner to allege that the newly discovered evidence "establishes factual innocence," *id.* ¶¶ 46, 51, we also stated that, because the factual innocence statute did not "state that the newly discovered evidence alone must be determinative," section 402 "contemplate[d] that it [would] require a combination of new and old evidence to establish factual innocence," *id.* ¶ 48. We view section 402 differently today because the legislature's addition of subsection 404(8) casts section 402 in a different light. As we explain, *see infra* ¶ 39, section 404 now provides the "clear directive" that was missing from the prior version of the statute, *see Brown*, 2013 UT 42, ¶ 50, and this addition illuminates the legislature's overall intent in a way the previous version of the statute didn't.

interpretation. He further challenges the State's interpretation as "irreconcilable" with the statute's plain language because the statute "explicitly and repeatedly instructs the district court to consider all the evidence." And he suggests that interpreting the statute to require the post-conviction court to base its determination of factual innocence "solely" on the newly discovered evidence "would improperly render these provisions superfluous."

¶37  We begin with *Brown*. There, the State argued—just as it does now—that the post-conviction court erred in basing its factual innocence determination on a combination of newly discovered evidence and previously available evidence. *Brown*, 2013 UT 42, ¶ 38. We rejected that argument, holding that "a determination of factual innocence can be based on a combination of newly discovered evidence and previously available evidence." *Id.* ¶ 54. To reach that conclusion, we analyzed the plain language of section 404 as it existed in 2010.[8] *See id.* ¶ 40 n.21.

¶38  At that time, section 404 looked much like it does today except for one "[i]mportant[]" difference: it did not include subsection 404(8) or its requirement that the court's factual innocence determination be "based upon" the newly discovered evidence. *See id.* ¶ 50; UTAH CODE § 78B-9-404 (2010). Instead, the only relevant instruction in section 404 was its directive to the court to "consider, in addition to the evidence presented at the [factual innocence] hearing . . . , the record of the original criminal case and at any postconviction proceedings in the case." UTAH CODE § 78B-9-404(3) (2010). Section 404 did *not*, as it does today, prohibit the post-conviction court from declaring the petitioner factually innocent unless the determination "is based upon the newly discovered material evidence described in the petition." *Compare id.* § 78B-9-404 (2010), *with id.* § 78B-9-404(8) (2024). In fact, the prior version of section 404 "never use[d] the phrase 'newly discovered evidence,'" nor did it "provide any direction on how much weight

---

[8] We issued *Brown* in 2013, but we interpreted the 2010 version of the statute because that was the version that applied to Brown's innocence petition. *See* 2013 UT 42, ¶ 40 n.21. Because the legislature amended the statute to add subsection 404(8) in 2012—before *Brown* was issued—we have no basis to construe the amendment as a codification of our analysis, as Thompson suggests. *See supra* ¶ 36.

to place on any one type of evidence." *Brown*, 2013 UT 42, ¶ 50. And this lack of direction drove our analysis in *Brown*.

¶39 But, as explained, the current version of the statute provides the very direction that was missing in 2010: that a determination of factual innocence be "based upon the newly discovered material evidence." UTAH CODE § 78B-9-404(8)(b). Thus, our analysis in *Brown* no longer applies. *Cf. State v. Robinson*, 2023 UT 25, ¶¶ 23–24, 540 P.3d 614 (explaining that our caselaw interpreting a prior version of a court rule does not govern after the rule was amended in a material way). With this added direction, we can no longer conclude that section 404 permits a court to base its determination of factual innocence on a combination of newly discovered evidence and previously available evidence. *See supra* ¶ 37.

¶40 Even so, Thompson resists this interpretation, asserting that it can't be reconciled with the statute's explicit and repeated instruction to the court to "consider" all the evidence. He reasons that an interpretation requiring the post-conviction court to base its innocence determination "solely" on the newly discovered evidence renders superfluous the instructions to consider the rest of the evidence. Thompson's primary observation is well taken— the factual innocence statute repeatedly instructs the post-conviction court to consider all the evidence. We count four occasions. Subsection 404(3) states that, in making its factual innocence determination, the court "shall consider, in addition to the evidence presented at the hearing under this part, the record of the original criminal case and at any postconviction proceedings in this case." UTAH CODE § 78B-9-404(3). Subsections 404(4) and 404(5)(a) each instruct the court on what to do if, "after considering all the evidence," it does or does not determine that the petitioner is factually innocent. *Id.* § 78B-9-404(4), (5)(a). And, as mentioned, *see supra* ¶ 32, subsection 404(8) details when "[t]he court, after considering all the evidence," may find a petitioner to be factually innocent, UTAH CODE § 78B-9-404(8).

¶41 But we disagree with Thompson's conclusion that the State's proffered interpretation of subsection 404(8) conflicts with these provisions or renders them superfluous. The legislature's repeated instruction to consider all the evidence plays a significant part in the post-conviction court's factual innocence analysis, not least because the record of the underlying case provides necessary context to make sense of the new evidence. The post-conviction

13

court might not be the same court that tried the petitioner (or accepted a guilty plea), and in such a circumstance it would be difficult for the court to assess the import of newly discovered evidence in a vacuum. It is the record of the original case that imbues the new evidence with meaning. For example, if, after one person is convicted of assault, someone else were to come forward and confess to assaulting the victim, that newly discovered evidence could suggest innocence on the part of the person who was convicted. But, for the court to make that determination, it would need to know, at the very least, whether the victim claimed there was more than one assailant. If the victim testified that there was only one assailant, the new evidence—if credible—would establish innocence. If the victim testified there were two assailants, however, the new evidence would not necessarily confirm the petitioner's innocence. To determine whether the new evidence established innocence, the court would need to "consider" the evidence already in the record.

¶42  Additionally, as we recognized in *Ashby v. State*, the post-conviction court is tasked with "carefully scrutiniz[ing]" the credibility of the newly discovered evidence. 2023 UT 19, ¶¶ 60–61, 71. And that credibility assessment could be informed by other evidence in the record. For example, in *Ashby*, we stated that "other evidence [may be] relevant to whether [a] recantation [of abuse] is credible, including the circumstances under which the original accusations were made." *See id.* ¶ 71. We observed that in assessing the credibility of the newly discovered evidence, a post-conviction court may need to consider, among other things, "observations by witnesses of the recanting witness when making the initial accusations," "the nature and detail" of the initial accusations, and "whether the [initial] accusations were made under oath." *See id.* (cleaned up). As this list demonstrates, the court could not fully assess the credibility of the recantation if it was unable to "consider" the entirety of the record.[9]

---

[9] In *Brown*, we noted that "it would be strange to direct a court to consider 'all the evidence' but then limit its decision to only the pivotal new evidence, *especially without giving the court any guidance on how to determine whether a given piece of evidence is, in fact, pivotal.*" 2013 UT 42, ¶ 52 (emphasis added). But section 404, as amended, now provides that guidance, identifying the pivotal evidence as the newly discovered evidence. *See* UTAH CODE § 78B-9-404(8).

¶43 Finally, Thompson argues that this interpretation of subsection 404(8) "makes no sense from a practical perspective." He asserts that, as construed, this subsection would tie the court's hands and preclude it from, for instance, considering the trial testimony of ten eyewitnesses if the defense were to introduce a new alibi witness in a post-conviction factual innocence proceeding. Thompson argues that under the State's reading, "only the testimony of the alibi witness could be considered, and the testimony of the ten original eyewitnesses would have to be ignored."

¶44 Our response to Thompson's concern is twofold. First, the premise of his argument is flawed. Subsection 404(8), and the factual innocence statute generally, not only permits but instructs the post-conviction court to consider the trial testimony of the ten eyewitnesses that Thompson contemplates. Thus, under the statute, their testimonies couldn't be ignored, and the court would need to consider that evidence in evaluating whether the new alibi evidence clearly and convincingly establishes factual innocence. Second, it may be true that the factual innocence statute, as amended, now requires more precision on the part of the post-conviction court because the court must ensure its determination is based on the newly discovered evidence and not something else. But we have no reason to believe that courts cannot separate the old from the new, and in any event, it would not be our place to rewrite the statute with a different design. *See, e.g.*, *State v. Herrera*, 895 P.2d 359, 362 (Utah 1995) ("Th[e] delicate balancing of public policy is better accomplished in the legislature than in the courts.").

## II. HORNUNG'S 23B TESTIMONY DOES NOT ESTABLISH THOMPSON'S FACTUAL INNOCENCE

¶45 Under the factual innocence statute, Thompson bore the burden to present newly discovered evidence that would clearly and convincingly show that he did not sexually assault A.T. in August 2002 in Salt Lake City. *See* UTAH CODE § 78B-9-404(1)(b). Thompson does not contend that Hornung's 23B testimony, on its own, demonstrates his factual innocence. Instead, he asserts—as he did before the post-conviction court—that Hornung's 23B testimony, "along with all the other evidence," clearly and convincingly shows his factual innocence. His view was, and still is, that Hornung's testimony casts "old evidence in a new light" by showing that the trucking logs introduced at trial "accurately reflect [Thompson's] whereabouts for the time specified therein."

¶46 Following Thompson's lead, the post-conviction court rejected the State's argument that Hornung's 23B testimony "alone must form the basis" of its factual innocence determination. It found that Hornung's 23B testimony undermined West's testimony at trial that the route on Thompson's trucking logs could not have been completed in the time recorded. And it found that the combination of trial and post-conviction evidence "weigh[ed] heavily in [Thompson's] favor as to his alibi and credibility."

¶47 Both Thompson's position and the court's ruling conflict with subsection 404(8). As discussed, *see supra* ¶¶ 29–39, subsection 404(8) requires newly discovered evidence to be determinative. A determination of a petitioner's factual innocence cannot be based upon trial evidence, even if that trial evidence has been cast "in a new light." Thus, while it was proper for the court to consider Thompson's testimony and his trucking logs, the court could not base its factual innocence determination on that evidence. And it is clear that Hornung's 23B testimony does not establish Thompson's factual innocence.

¶48 Hornung's 23B testimony impeached the trial testimony of West, who called the reliability of Thompson's trucking logs into question. In so doing, Hornung mitigated the damage West inflicted on Thompson's credibility and the credibility of his trucking logs.[10] Yet Hornung's testimony did not, and could not, establish that the logs were accurately or contemporaneously kept, that Thompson traveled on the date and in the timeframe reported in his log, or that Thompson did not sexually assault A.T. in August of 2002. At best, Hornung's testimony demonstrated that Thompson's alibi was plausible: that he *could have* traveled from Rapid City to Salt Lake City in ten hours, as recorded in his log. But Hornung's testimony did not establish that Thompson did not "engage in the conduct for which [he] was convicted." UTAH CODE

---

[10] The State asserts that Hornung's 23B testimony cannot establish factual innocence for the additional reason that "it is mere impeachment evidence." It cites section 402 of the factual innocence statute, which requires a petitioner to aver at the petition stage that "the material evidence is not merely impeachment evidence." UTAH CODE § 78B-9-402(2)(a)(iv). We have no need to address whether Hornung's testimony constitutes mere impeachment evidence because Hornung's testimony, however characterized, cannot establish Thompson's factual innocence.

§ 78B-9-401.5(2)(a). Accordingly, we must reverse the post-conviction court's factual innocence determination.

## CONCLUSION

¶49 Under the plain language of Utah Code subsection 78B-9-404(8), a post-conviction court's factual innocence determination must be based upon newly discovered evidence. On its own, Hornung's 23B testimony does not establish Thompson's factual innocence. It could neither confirm nor deny Thompson's whereabouts, and thus it could not clearly and convincingly establish that Thompson did not sexually abuse A.T. in August 2002. The post-conviction court erred in basing its factual innocence determination on Thompson's testimony and trucking logs, which were available at trial, rather than on Hornung's 23B testimony. Accordingly, we reverse.

––––––––––––